JUDY ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* OHIO BUREAU OF MOTOR VEHICLES, APPELLANT AND CROSS-APPELLEE.

[Cite as *Judy v. Ohio Bur. of Motor Vehicles,*
100 Ohio St.3d 122, 2003-Ohio-5277.]

(No. 2002–0293—Submitted March 11, 2003—Decided October 8, 2003.)

MOYER, C.J.

{¶ 1} This case requires us to decide (1) whether former R.C. 4511.191(L) authorized the Ohio Bureau of Motor Vehicles ("BMV") to collect only one reinstatement fee from a driver who had made a single request for license reinstatement after receiving an administrative license suspension ("ALS") and a judicial license suspension for a single arrest under R.C. 4511.19(A) and (2) if so, whether the trial court erred in awarding postjudgment interest against the state pursuant to R.C. 1343.03(A).

I

{¶ 2} During separate incidents in 1994, Ohio law enforcement officers arrested Steven Judy and Mark Poirier for driving under the influence of alcohol ("DUI"). Judy and Poirier submitted to breath-alcohol tests, which revealed breath-alcohol concentrations that exceeded the legal limit. In accordance with R.C. 4511.191(F), the arresting officers issued both Judy and Poirier a 90–day ALS. Judy and Poirier subsequently pled no contest to DUI charges, and each received a judicial license suspension for six months under R.C. 4507.16(B).

{¶ 3} At the conclusion of their suspensions, Judy and Poirier petitioned the BMV to reinstate their licenses pursuant to former R.C. 4511.191(L). To that end, Judy and Poirier provided proof of financial responsibility, and each tendered a $250 reinstatement fee. The BMV, however, interpreted former R.C. 4511.191(L) to require a $250 reinstatement fee for each license suspension. Consequently, the BMV required both Judy and Poirier to pay $500—$250 for the ALS and $250 for the judicial license suspension.

{¶ 4} On February 6, 1995, Judy and Poirier filed a class-action lawsuit in the Lucas County Court of Common Pleas, alleging that the BMV incorrectly interpreted former R.C. 4511.191(L) and wrongfully assessed two reinstatement fees against the members of the certified class.[1] The trial court granted partial summary judgment in favor of the certified class and ordered the BMV to pay $5,266,650 in restitution and postjudgment interest at the rate of ten percent per annum from the date of the partial summary judgment. The BMV appealed to the Sixth District Court of Appeals, arguing that the trial court (1) lacked subject matter jurisdiction, (2) incorrectly interpreted former R.C. 4511.191(L), and (3) erred in awarding postjudgment interest against the state. The court of appeals affirmed the judgment of the trial court on the issues of subject matter jurisdiction and statutory construction but reversed and remanded on the issue of postjudgment interest. The BMV appeals the court of appeals' statutory construction of former R.C. 4511.191(L),[2] and the certified class cross-appeals the court's denial of postjudgment interest.

---

1. The trial court certified the class to include "[a]ll persons who, having been issued a DUI citation, within the State of Ohio after September 3, 1993, consented to testing for driving with a prohibited concentration of alcohol, tested positive for that finding, were issued an automatic administrative license suspension pursuant to Ohio Rev.Code 4511.191, subsequently were found guilty of driving while under the influence of alcohol, received an additional suspension under R.C. 4507.16(B), waited until all license terminations had been concluded, made a single request for license reinstatement under R.C. 4511.191(L) and were then required by defendant to pay two separate $250.00 reinstatement fees pursuant to defendant's interpretation of R.C. 4511.191(L) and related statutory provisions."

2. The BMV did not appeal to this court the issue of whether the court of common pleas had subject matter jurisdiction over an action against the state for reimbursement of improperly assessed fees.

{¶ 5} The cause is now before this court upon the allowance of a discretionary appeal.

## II

### A

{¶ 6} We begin our analysis with a review of the relevant statutory language. Former R.C. 4511.191(L) provides:

{¶ 7} *"At the end of a suspension period under this section, section 4511.196, or division (B) of section 4507.16 of the Revised Code and upon the request of the person whose driver's or commercial driver's license or permit was suspended and who is not otherwise subject to suspension, revocation, or disqualification, the registrar shall return the driver's or commercial driver's license or permit to the person upon the occurrence of all of the following*:

{¶ 8} "(1) A showing by the person that the person had proof of financial responsibility, a policy of liability insurance in effect that meets the minimum standards set forth in section 4509.51 of the Revised Code, or proof, to the satisfaction of the registrar, that the person is able to respond in damages in an amount at least equal to the minimum amounts specified in section 4509.51 of the Revised Code.

{¶ 9} "(2) *Payment by the person of a license reinstatement fee of two hundred and fifty dollars* to the bureau of motor vehicles, which fee shall be deposited in the state treasury * * *."  (Emphasis added.)  Am.Sub.S.B. No. 82, 145 Ohio Laws, Part I, 879, 940.[3]

{¶ 10} A proper analysis of former R.C. 4511.191(L) requires an examination of the suspensions and reinstatement requirements enumerated under that section.

### 1. The Suspensions Enumerated Under Former R.C. 4511.191(L)

{¶ 11} The first clause in former R.C. 4511.191(L) enumerates three types of license suspensions that operate in tandem.  The first type of license suspension—a suspension "under this section"—is an ALS that an arresting officer issues to a defendant immediately upon arrest and that "last[s] at least until the person's initial appearance on the charge."  R.C. 4511.191(D)(1)(a).  This suspension is "intended to remove from the highway those motorists who are a threat to themselves and to others" until the criminal charge can be heard in a judicial forum.  *State v. Gustafson* (1996), 76 Ohio St.3d 425, 438, 668 N.E.2d 435.  The

---

3.  Effective September 16, 1998, the General Assembly amended R.C. 4511.191 to require one reinstatement fee of $405 "if the suspensions arise from a single incident or a single set of facts and circumstances."  R.C. 4511.191(L)(2) and (3).  Am.Sub.S.B. No. 80, 147 Ohio Laws, Part IV, 7197, 7209–7210.

defendant may appeal an ALS "at the * * * initial appearance * * * in the court in which the person will appear on the charge." R.C. 4511.191(H)(1). The ALS continues no later than when "the complaint alleging the violation for which the person was arrested * * * is adjudicated on the merits." R.C. 4511.191(H)(2); *Gustafson,* 76 Ohio St.3d at 441, 668 N.E.2d 435.

{¶ 12} The second type of suspension enumerated under former R.C. 4511.191(L)—a suspension under R.C. 4511.196—is an interim suspension that the trial judge may impose if the judge at the initial appearance terminates the ALS but nonetheless determines "that the person's continued driving will be a threat to public safety." R.C. 4511.196(B)(1). The trial court may also impose such a suspension in cases where the ALS is inapplicable, such as when a defendant was arrested for DUI but tested below the prohibited concentration of alcohol. R.C. 4511.196(B)(2). The interim judicial suspension continues "until the complaint on the charge resulting from the arrest is adjudicated on the merits." R.C. 4511.196(C).

{¶ 13} The final type of license suspension enumerated under former R.C. 4511.191(L)—a suspension under R.C. 4507.16(B)—is a postconviction judicial suspension that takes effect "at the point where a criminal conviction of drunk driving is obtained." *Gustafson,* 76 Ohio St.3d at 441, 668 N.E.2d 435. This suspension endures for "not less than six months nor more than three years" for first-time offenders and automatically terminates an ALS or an interim license suspension. R.C. 4507.16(B)(1); *Gustafson,* 76 Ohio St.3d at 441, 668 N.E.2d 435. The registrar must credit against a postconviction judicial suspension the time during which the license was subject to an ALS or an interim judicial suspension. R.C. 4507.16(J); R.C. 4511.196(C). This statutory scheme allows the ALS and judicial suspensions to work in tandem, thereby removing dangerous drivers from the highway until the criminal charge is adjudicated and then crediting the time served against any suspension imposed upon conviction.

### 2. The Reinstatement Provisions of Former R.C. 4511.191(L)

{¶ 14} Former R.C. 4511.191(L) delineated the procedure by which a driver could petition the BMV for reinstatement of a license that was subject to one or more of the foregoing suspensions. The general reinstatement provision in former R.C. 4511.191(L) provided that the driver must satisfy three requirements before the financial-responsibility and reinstatement-fee provisions would apply: first, the driver had to wait until the "end of a suspension period"; second, the driver had to make a "request" to the BMV for reinstatement; and third, the license must not have been "otherwise subject to suspension, revocation, or disqualification." The use of the conjunctive "and" between each of these requirements indicates that the financial responsibility and reinstatement-fee

provisions did not become operative until *all* of the requirements in the general provision had been satisfied.

{¶ 15} Given that the requirements in the general provision were conditions precedent to the applicability of the reinstatement-fee provision, it follows that the third requirement in the general provision—that the license "not [be] otherwise subject to suspension, revocation, or disqualification"—must have been satisfied *before* the BMV could collect a reinstatement fee. As a result, the BMV could not charge a reinstatement fee—and, hence, could not reinstate a license—until *all* license suspensions had concluded. Because a driver had to wait until all suspensions had concluded before applying for reinstatement, the driver necessarily applied for only *one* reinstatement when making a "request" pursuant to former R.C. 4511.191(L).

{¶ 16} With these principles in mind, we turn to the instant case.

B

{¶ 17} The BMV asserts that former R.C. 4511.191(L) required a $250 reinstatement fee for each applicable suspension enumerated under that section. In support of this proposition, the BMV advances two primary arguments: (1) the plain language of the statute required a separate fee for each suspension, and (2) our prior case law is consistent with a "separate fee" interpretation. We address each argument separately.

1. Plain Language of Former R.C. 4511.191(L)

{¶ 18} The gravamen of the BMV's argument is that the plain language of former R.C. 4511.191(L) allowed the BMV to collect a reinstatement fee for each applicable suspension enumerated under that section. Specifically, the BMV asserts that the word "a" in the first clause of former R.C. 4511.191(L), which conditions the reinstatement of a license on the "end of *a* suspension period," is synonymous with the word "each." (Emphasis added.) The BMV reasons, therefore, that the legislature in effect said: "At the end of [each] suspension period * * * the registrar shall return the driver's * * * license * * * upon * * * [p]ayment by the person of a license reinstatement fee of two hundred fifty dollars." Such a reading, the BMV argues, is buttressed by the Webster's New World Dictionary, which defines "a" as *"each*; * * * connotes a thing not previously noted or recognized; * * * to each, in each, *for each,"* quoting Webster's New World Dictionary (3d Ed.1998). (Emphasis added.)

{¶ 19} We disagree with the BMV's plain-language interpretation of former R.C. 4511.191(L). In the context of former R.C. 4511.191(L), the word "a" is an indefinite article used to denote a suspension that is "undetermined, unidentified, or unspecified." See Webster's Third New International Dictionary (1986) 1. Given that the word "a" is used as an indefinite article—and thus is not

synonymous with the word "each"—the BMV's argument amounts to a contention that we *substitute* the word "each" for the word "a." Such a modification to the statutory language, however, is contrary to the well-settled rule that we must " 'give effect to the words used [in the statute], not * * * delete words used or * * * insert words not used.' " *Gutmann v. Feldman*, 97 Ohio St.3d 473, 2002-Ohio-6721, 780 N.E.2d 562, ¶ 22, quoting *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus.

{¶ 20} We conclude that the phrase "[a]t the end of a suspension" is merely an introduction to the reinstatement procedure in former R.C. 4511.191(L), rather than an indicator of how many fees the BMV could collect for such reinstatement. The number of reinstatement fees is instead determined by the reinstatement-fee provision in former R.C. 4511.191(L)(2), which required a driver to tender "a license reinstatement fee of two hundred fifty dollars." We hold that this provision clearly and unambiguously required a driver to pay only *one* reinstatement fee when making a single request for license reinstatement. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14 ("where the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom").

{¶ 21} Furthermore, the statutory fee in former R.C. 4511.191(L)(2) is, by its express terms, a *reinstatement* fee. As a result, the fee is tied to the *reinstatement of the license* rather than the suspensions enumerated in the first clause of former R.C. 4511.191(L). Indeed, the very nature of a "reinstatement," together with the requirement that the license "not [be] otherwise subject to suspension," leads to the inescapable conclusion that the BMV could reinstate a suspended license only once—no matter the number of suspensions to which the license is subject. R.C. 4511.191(L). As there could be but one *reinstatement*, there could be but one *reinstatement fee*.

{¶ 22} Finally, the BMV's interpretation of former R.C. 4511.191(L) is inconsistent with the language of the general driver's license statute in R.C. 4507.02.[4] That statute provides: "No person whose driver's * * * license * * * has been suspended * * * shall operate any motor vehicle within this state until the person has paid *the* license reinstatement *fee* required pursuant to division (L) of section 4511.191 * * *." (Emphasis added.) R.C. 4507.02(C). The use of the definite article "the" and the singular word "fee" indicate that, although a license may have been subject to multiple suspensions, the statute required only one reinstatement fee. Accordingly, we conclude that the plain language of former R.C.

---

4. The General Assembly amended R.C. 4507.02 in June 1993 to address the same three suspension provisions that are addressed in former R.C. 4511.191(L). Sub.S.B. No. 62, 145 Ohio Laws, Part I, 479, 509.

4511.191(L) authorized the BMV to collect only one reinstatement fee from a driver who had made a single request for license reinstatement after receiving an ALS and a judicial suspension for a single DUI arrest.

## 2. Judicial Interpretation of Former R.C. 4511.191(L)

{¶ 23} The BMV additionally asserts that our case law supports the proposition that former R.C. 4511.191(L) required a separate reinstatement fee for each applicable suspension enumerated under that section. The BMV cites two cases in support of this proposition—*State v. Uskert* (1999), 85 Ohio St.3d 593, 709 N.E.2d 1200, and *State v. Lewis* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699. In *Uskert,* we addressed whether the reinstatement fee paid to the BMV at the conclusion of an ALS violated the Double Jeopardy Clause of the United States Constitution. Holding that the reinstatement fee did not subject the defendant to double jeopardy, we concluded—albeit preliminarily—that the ALS is separate and distinct from the judicial suspension. *Uskert,* 85 Ohio St.3d at 596, 709 N.E.2d 1200. Consequently, the BMV reasons, "[i]f the ALS and the ALS-based fee are both separate from the judicial suspension, then it makes sense that the ALS-based fee is separate from the reinstatement fee triggered by the judicial suspension."

{¶ 24} In contrast to the BMV's assertion, however, *Uskert* did not conclude that the reinstatement fee was "ALS-based" in the sense that the ALS, rather than the reinstatement of the license, triggered the reinstatement fee. To the contrary, *Uskert* recognized that the fee was "associated with the ALS" because only the ALS, and not the judicial suspension, had been imposed (and had concluded) when the driver requested license reinstatement. Id. at 600, 709 N.E.2d 1200. Such a request for "interim" reinstatement—that is, reinstatement after the ALS had concluded but before the judicial suspension was imposed— required the driver to then make a *second request* for reinstatement at the conclusion of the judicial suspension. Under the facts of *Uskert,* therefore, the BMV could have lawfully collected two reinstatement fees because the driver would have made *two requests for reinstatement.*

{¶ 25} The drivers in the instant case, by contrast, made a *single* request for reinstatement after both the ALS and judicial license suspension had concluded. *Uskert,* therefore, is distinguishable to the extent that it acknowledged the collection of two reinstatement fees for a single DUI arrest. See, e.g., *Uskert,* 85 Ohio St.3d at 596, 709 N.E.2d 1200, fn. 1 ("the General Assembly amended R.C. 4511.191 to require *only one reinstatement fee * * *"* [emphasis added] ); id. at 602, 709 N.E.2d 1200 (F.E. Sweeney, J., dissenting) (*"This fee was in addition to* many other costs * * *. For example, *a fee was imposed after the court suspension* " [emphasis added] ). Notwithstanding this distinction, however, *Uskert* and the instant case share a common principle of law: Former R.C.

4511.191(L) required a driver to pay a reinstatement fee each time the driver requested, and obtained, license reinstatement from the BMV.

{¶ 26} The second case on which the BMV relies is *State v. Lewis*, 85 Ohio St.3d 632, 710 N.E.2d 699. The trial court in *Lewis* had rejected the defendant's argument that the imposition of both the ALS and the punishment on the underlying charge was a double jeopardy violation and had ordered that the "reinstatement fee from ALS * * * be applied to any reinstatement fees due on [the judicial] suspension." *Cuyahoga Falls v. Lewis* (Sept. 23, 1998), Summit App. No. CA 19006, 1998 WL 663226. In a two-sentence per curiam decision, we affirmed the judgment of the trial court on the authority of *Uskert* but remanded "to reinstate the original * * * Administrative License Suspension reinstatement fee that the trial court ordered be applied to any reinstatement fees due on the DUI suspension." *Lewis*, 85 Ohio St.3d at 632, 710 N.E.2d 699. Based on our remand, the BMV contends that we have "already read *Uskert* to mandate the two-suspensions, two-fees approach."

{¶ 27} The BMV's reliance on *Lewis*, however, is unavailing for the same reason that *Uskert* is inapposite: the driver in that case would have made *two* requests for reinstatement—one at the conclusion of the ALS and one at the conclusion of the judicial suspension. *Lewis*, therefore, did not consider whether the BMV could collect two reinstatement fees from a driver who had made a *single* request for reinstatement. Nevertheless, the "two-fee" reading of *Lewis*, like that of *Uskert*, is consistent with our conclusion that the reinstatement fee in former R.C. 4511.191(L) was tied to the reinstatement of a license rather than the suspensions to which the license was subject. Accordingly, we conclude that our case law fails to support the proposition that former R.C. 4511.191(L) required a separate reinstatement fee for each license suspension when a driver has made a single request for license reinstatement.[5]

## III

{¶ 28} Having concluded that the BMV wrongfully collected two reinstatement fees from the members of the certified class, we now consider whether the trial court erred in awarding postjudgment interest against the state. We begin our

---

5. Our case law not only fails to support the BMV's position, but it may undermine it. In *State v. Gustafson* (1996), 76 Ohio St.3d at 438, 668 N.E.2d 435, we held that the "continued recognition of an ALS following judicial imposition of criminal penalties" is a *second punishment and is thus prohibited by the Double Jeopardy Clause of the United States Constitution.* The BMV's position that a separate fee is "tied" to the ALS thus calls into question whether such a fee would be the type of "continued recognition" of an ALS that *Gustafson* prohibited. Nevertheless, we decline to render judgment on the issue because our statutory analysis of former R.C. 4511.191(L) prohibits such an application of the statute. See *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 28, 630 N.E.2d 329 ("[T]he court decides constitutional questions only when absolutely necessary * * *.").

analysis with the well-settled rule that " '[i]n the absence of a statute requiring it, or a promise to pay it, interest cannot be adjudged against the state for delay in the payment of money.' " *Lewis v. Benson* (1979), 60 Ohio St.2d 66, 67, 14 O.O.3d 269, 397 N.E.2d 396, quoting *State ex rel. Parrott v. Bd. of Pub. Works* (1881), 36 Ohio St. 409, 1881 WL 12. Our analysis, therefore, turns to whether the General Assembly has enacted a statute that requires the state to pay postjudgment interest when money became due and payable upon the judgment of the trial court.

{¶ 29} The certified class relies on R.C. 1343.03 as the statute that requires the state to pay postjudgment interest in the instant case. R.C. 1343.03(A) provides: "*[W]hen money becomes due and payable* * * * *upon all judgments*, decrees, and orders of any judicial tribunal *for the payment of money arising out* of tortious conduct or a contract or *other transaction, the creditor is entitled to interest at the rate of ten per cent per annum.*" (Emphasis added.) Relying on this provision, the trial court concluded that "[u]pon the issuance of [the trial court] judgment, the state became liable for reimbursement of the overpayment to plaintiffs, and the plaintiffs became creditors of the state." The court of appeals reversed the judgment of the trial court, holding that R.C. 1343.03 is a general statute that "does not provide statutory authority to assess interest against the state."

{¶ 30} Contrary to the court of appeals' decision, however, our case law has held that the state is liable for postjudgment interest under R.C. 1343.03. In *Beifuss v. Westerville Bd. of Edn.* (1988), 37 Ohio St.3d 187, 525 N.E.2d 20, we addressed whether a public board of education was liable for *prejudgment* interest on an order granting back pay to public employees. We determined that the school board was a state agency against which interest could not be adjudged absent statutory authority. Concluding that there was no "statutory authority requiring the payment of prejudgment interest by this governmental entity," we held that prejudgment interest could not be adjudged against the school board. Id. at 190, 525 N.E.2d 20.

{¶ 31} Three years later, we again addressed whether a public board of education was liable for interest on an award for back pay in *State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn.* (1991), 62 Ohio St.3d 88, 578 N.E.2d 464. Unlike *Beifuss,* however, *Tavenner* addressed whether R.C. 1343.13 required the state to pay *postjudgment* interest. With the understanding that prejudgment interest and postjudgment interest are "clearly distinguishable," we concluded that the public school board was liable for postjudgment interest under R.C. 1343.03(A). Id. at 91, 578 N.E.2d 464 (Douglas, J., concurring); see, also, *State ex rel. Bowman v. Columbiana Cty. Bd. of Commrs.* (1997),

77 Ohio St.3d at 401, 674 N.E.2d 694 (holding that a county board of commissioners is liable for postjudgment interest under R.C. 1343.03[A]).

{¶ 32} Our distinction between prejudgment and postjudgment interest is born of good reason. Whereas the policy behind prejudgment interest is to encourage prompt settlement and to impose a civil sanction against a party who holds money against the lawful claim of another, the policy behind postjudgment interest is " 'to compensate the judgment creditor for the fact that he has not had the use of a certain sum of money that has been adjudged to be his.' " *S. Farm Bur. Cas. Ins. Co. v. Brinker* (2002), 350 Ark. 15, 21, 84 S.W.3d 846, quoting *Equifax, Inc. v. Luster* (E.D.Ark.1978), 463 F.Supp. 352. Indeed, Ohio case law has consistently recognized that R.C. 1343.03(A) bestows a right to postjudgment interest "automatically * * * as a matter of law." *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 542 N.E.2d 654, paragraph seven of the syllabus; see, also, *Cafaro Northwest Partnership v. White* (1997), 124 Ohio App.3d 605, 608, 707 N.E.2d 4; *Dayton Sec. Assoc. v. Avutu* (1995), 105 Ohio App.3d 559, 566, 664 N.E.2d 954.

{¶ 33} Thus, *Beifuss* and *Tavenner* make clear two propositions of law: a school board is (1) a state agency for purposes of such litigation and (2) liable for postjudgment interest under R.C. 1343.03. These two propositions, taken together, stand for the principle that the state is liable for postjudgment interest under R.C. 1343.03. See, also, *Bowman,* 77 Ohio St.3d at 398, 674 N.E.2d 694. No one disputes the status of the BMV as a state agency. Accordingly, we hold that the BMV is liable for postjudgment interest pursuant to R.C. 1343.03. Because the court of appeals concluded that the BMV was not liable for postjudgment interest, it did not review the trial court's determination that postjudgment interest should accrue from the date of the partial summary judgment. We therefore remand the cause to the court of appeals to review that determination.

Judgment affirmed in part,<br>reversed in part<br>and cause remanded.

F.E. SWEENEY, PFEIFER, WALTERS and WISE, JJ., concur.

CARR and LUNDBERG STRATTON, JJ., dissent.

DONNA J. CARR, J., of the Ninth Appellate District, sitting for RESNICK, J.

SUMNER E. WALTERS, J., of the Third Appellate District, sitting for COOK, J.

JOHN W. WISE, J., of the Fifth Appellate District, sitting for O'CONNOR, J.

---

**CARR, J., dissenting.**

{¶ 34} I respectfully dissent. Although the majority focuses primarily on the plain language of former R.C. 4511.191(L), it is impossible to construe the meaning of former R.C. 4511.191(L) without reference to how the decisions of this court have influenced the BMV's interpretation of that language.

{¶ 35} In *State v. Gustafson* (1996), 76 Ohio St.3d 425, 442, 668 N.E.2d 435, this court concluded that an administrative license suspension under R.C. 4511.191 that extended beyond criminal sentencing following a DUI conviction would constitute an additional punishment in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions. Consequently, *Gustafson* altered the plain language of R.C. 4511.191 and held that "a sentencing court has judicial power * * * to order the termination of an administrative license suspension at the time of sentencing, as continuation of the ALS would result in unconstitutional application of R.C. 4511.191 to the criminal offender." Because, despite the language of the statute, continued recognition of the ALS after imposition of criminal penalties had been deemed unconstitutional, the BMV and courts throughout the state began to construe R.C. 4511.191 as setting forth two separate and distinct license suspension periods: the ALS and the judicial license suspension.

{¶ 36} Viewing the ALS and judicial suspension as distinct suspension periods, and because an ALS had to end upon imposition of the judicial suspension, the BMV apparently routinely charged a reinstatement fee for the ALS at or before the time of criminal sentencing. That was the very situation before this court in *State v. Uskert* (1999), 85 Ohio St.3d 593, 709 N.E.2d 1200, and *State v. Lewis* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

{¶ 37} This court's decisions in *Uskert* and *Lewis* (although neither directly addressed this issue) implied that reinstatement of a driver's license under former R.C. 4511.191(L) required payment of two reinstatement fees: one for the ALS and one for the judicial suspension. The reinstatement fee at issue in both *Uskert* and *Lewis* was not the result of a request for reinstatement by the driver at the end of the ALS period. Instead, it appears that the reinstatement fee was charged by the BMV before the ALS had expired.

{¶ 38} The majority's attempt to factually distinguish *Uskert* and *Lewis* by indicating that each driver had sought reinstatement of his license at the end of the ALS and prior to the judicial suspension is not supported by the decisions of either this court or the appellate courts. In fact, the *Lewis* appellate opinion indicates that the BMV automatically charged Lewis the ALS reinstatement fee prior to sentencing on the criminal charges and only one month into his ALS suspension which would have been at least one year, for refusal to submit to a breath test. See *Cuyahoga Falls v. Lewis* (Sept. 23, 1998), 9th Dist. No. CA 19006, 1998 WL 663226; R.C. 4511.191(E)(1). Uskert was likewise automatically charged an ALS reinstatement fee without making a request for reinstatement, as his ALS was still in effect until the trial court terminated it at the time of sentencing. See *State v. Uskert* (Dec. 7, 2000), 5th Dist. No. 99–COA–1329; *State v. Uskert* (Dec. 19, 1997), 5th Dist. No. 97–COA–01219.

{¶ 39} Although both Uskert and Lewis raised constitutional challenges to former R.C. 4511.191 and did not seek a construction of the statute's language, constitutional challenges to R.C. 4511.191 should not have been considered if, as the majority holds today, the BMV had no statutory authority to collect the reinstatement fees at issue. This court has repeatedly held that it will not reach constitutional issues unless absolutely necessary. *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396; *In re Boggs* (1990), 50 Ohio St.3d 217, 221, 553 N.E.2d 676; *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 364 N.E.2d 852. If the actions of the BMV in *Uskert* and *Lewis* were in violation of the plain language of former R.C. 4511.191(L), the statutory violation should have been addressed then. By failing to reach that issue, *Uskert* and *Lewis* implicitly authorized the BMV's practice of collecting two reinstatement fees. See, also, *Uskert,* 85 Ohio St.3d at 596, 709 N.E.2d 1200, fn. 1, where this court seemed to recognize that the statute provided for the collection of two fees by observing, "Effective September 16, 1998, the General Assembly amended R.C. 4511.191 to require only one reinstatement fee * * *."

{¶ 40} Moreover, the majority now indicates that the BMV cannot charge a reinstatement fee until three conditions precedent are satisfied: the combined ALS and judicial suspension period has ended, a request has been made by the driver, and driver is not otherwise subject to suspension. In *Uskert,* however, this court construed former R.C. 4511.191(L) differently, indicating that proof of financial responsibility and payment of the reinstatement fee were conditions precedent to return of the driver's license. *Uskert,* 85 Ohio St.3d at 596, 709 N.E.2d 1200. This court construed the provision similarly in *Gustafson*: "Following the prescribed term of the suspension, the driver *may* request the BMV to return or reissue the suspended license, which the BMV must do upon payment of a $250 reinstatement fee and proof of compliance with Ohio's financial responsibility requirements. R.C. 4511.191(L)." (Emphasis added.) *Gustafson,* 76 Ohio St.3d at 432, 668 N.E.2d 435.

{¶ 41} Based on the rationale of this court's former decisions, I cannot concur in the majority's reasoning that former R.C. 4511.191(L) permitted the BMV to collect only one reinstatement fee, only at the end of the suspension periods, and only after a request by the driver for reinstatement.

{¶ 42} Furthermore, under today's ruling, persons under various suspensions for committing multiple drunk-driving offenses would have to pay only one reinstatement fee if they had waited until all suspensions were terminated. I do not believe that this was the intended result of former R.C. 4511.191(L).

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

134

Cooper & Walinski and John Czarnecki; Wittenberg, Phillips, Levy & Nusbaum and Jerome Phillips, for appellees and cross-appellants.

Jim Petro, Attorney General, Stephen P. Carney, Associate State Solicitor, Michael Gladman and John W. Barron, Assistant Solicitors, for appellant and cross-appellee.