[Cite as *Davis v. Davis*, 2018-Ohio-1889.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| SANDRA L. DAVIS, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-G-0129** |
| CHARLES W. DAVIS, | : | |
| Defendant-Appellant. | : | |

Appeal from the Geauga County Court of Common Pleas, Case No. 08 DC 1389.

Judgment: Affirmed.

*A. Pearce Leary*, 100 Park Place, Chagrin Falls, OH 44022-4442 (For Plaintiff-Appellee).

*A. Clifford Thornton, Jr.*, PDC Building, 3659 Green Road, Suite #305, Beachwood, OH 44122 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Charles W. Davis, appeals the trial court's June 16, 2017 decision ordering him to pay appellee, Sandra L. Davis, post-judgment interest following the parties' divorce. He also appeals the trial court's decision denying his request to refer Sandra for prosecution based on her alleged perjury during the hearing on interest. We affirm.

**{¶2}** The trial court issued its final divorce decree on May 5, 2011, and following Charles' first appeal, we modified and affirmed the trial court's decision. *Davis v. Davis,* 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶108.

**{¶3}** In October of 2013, Sandra moved the court for statutory interest, under R.C. 1343.03, on her unpaid portion of the marital property division. She sought interest on the unpaid Smith Barney funds and the remaining balance owed to her on the equalization payment. Both amounts were to be paid by August 3, 2011.

**{¶4}** The trial court granted Sandra's motion for interest on May 12, 2014 and noted that the motion was unopposed. This decision, however, did not determine the amount of interest Charles owed.

**{¶5}** More than a year later, on August 24, 2015, Sandra moved to show cause as to why Charles should not be held in contempt based on his nonpayment of the interest pursuant to the court's May 12, 2014 decision. She claimed that Charles initially owed her $18,812 in total interest and that she received one interest payment in the amount of $7,139.60. Thus, Sandra sought the interest balance of $11,672.

**{¶6}** In a related entry, issued in November 2016, overruling Charles' objections to a magistrate's decision, the trial court limited the parties' arguments at the upcoming hearing on statutory interest, explaining:

**{¶7}** "This Court has already determined that Plaintiff is entitled to statutory interest on the sums that Defendant was to pay her. That being said, Defendant is not precluded or prohibited from presenting evidence as to what he has already paid Plaintiff, nor is he precluded from presenting evidence regarding offers of payment that he has made to Plaintiff."

{¶8} Charles opposed Sandra's claimed interest and argued that he offered Sandra the proceeds of two loans on the parties' Kinsman property, and had she taken this money, he would not owe her any additional statutory interest.

{¶9} Following the December 30, 2016 evidentiary hearing on interest, the trial court rejected Charles' claim that his offers to pay Sandra a lump sum at two earlier dates reduced the amount of statutory interest. Instead, it held he owed $11,670.40 in statutory interest.

{¶10} Charles raises two assigned errors. His first assignment asserts:

{¶11} "The trial court's finding that Appellant did not make a proper 'tender' to the appellee/wife and therefore the running of interest was not tolled is error as it is an abuse of discretion and against the manifest weight of the evidence."

{¶12} Charles argues he should not be responsible for this $11,670.40 interest award because he attempted to pay Sandra $150,000 in November of 2010, and had she accepted this amount in 2010, he would owe no additional interest. He does not challenge the fact that the trial court awarded interest and does not otherwise dispute the amount of the interest awarded, and as such, we do not address these aspects of the decision.

{¶13} R.C. 1343.03(B) provides that interest on a judgment "shall be computed from the date the judgment * * * is rendered to the date on which the money is paid * * * ." Further, "'an order distributing marital assets from one party to another has the force of a money judgment, and the recipient is entitled to interest on any amount due and owing under the order but unpaid.'" *Brannon v. Brannon*, 11th Dist. Trumbull No. 96-T-

5572, 1997 WL 401537, *9 (June 27, 1997), quoting *Woloch v. Foster*, 98 Ohio App.3d 806, 812, 649 N.E.2d 918 (1994).

{¶14} A trial court has discretion in determining whether to award interest on a marital property division. *Koegel v. Koegel,* 69 Ohio St.2d 355, 356, 432 N.E.2d 206 (1982). We review a trial court's decision awarding interest for an abuse of discretion. An abuse of discretion connotes judgment exercised by a court that neither comports with reason nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). An abuse of discretion exists when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶15 (8th Dist.)

{¶15} Charles argues in his motion opposing Sandra's motion for interest that she is seeking interest on money that he twice offered to pay her, but that she refused to accept and that it would be inequitable to hold him accountable for interest in light of these facts. On appeal, however, he limits his argument to his offer to pay Sandra $150,000 in November of 2010, and as such we limit our opinion accordingly.

{¶16} Charles urges us to find that he tendered a lump sum payment to Sandra in November of 2010, and had she accepted this payment, he would not owe her any additional interest. At the time he attempted to pay her $150,000, he claims he was not attempting to reduce his interest obligation, but merely complying with the magistrate's August 18, 2010 order awarding him the parties' Kinsman LLC property with the proceeds from refinancing this property going to Sandra.

4

**{¶17}** This court has explained the law governing when an offer by a debtor to a creditor stops the accrual of interest:

**{¶18}** "'[T]he policy behind post[-]judgment interest is "to compensate the judgment creditor for the fact that he has not had the use of a certain sum of money that has been adjudged to be his."'" *Judy[v. Ohio Bur. of Motor Vehicles,* 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d 45, ¶32] (citations omitted); accord *Lovewell v. Physicians Ins. Co. of Ohio,* 79 Ohio St.3d 143, 147, 679 N.E.2d 1119, 1997-Ohio-175, ('[t]he purpose of post[-]judgment interest awards is to guarantee a successful plaintiff that the judgment will be paid promptly, and to prevent a judgment debtor from profiting by withholding money belonging to the plaintiff').

**{¶19}** "It follows then that ' * * * a [judgment] debtor may stop the running of interest by * * * tendering unconditional payment in full of the judgment rendered against him.' *Viock v. Stowe-Woodward Co.* (1989), 59 Ohio App.3d 3, 5, 569 N.E.2d 1070.

**{¶20}** "Tender is defined at common law as 'an unconditional offer of payment consisting of the actual production * * * of a sum not less than the amount due on a specific debt or obligation.' * * * Moreover, where the tender is accompanied by a release, such tender is ineffective. *Marsico v. Rader* (Nov. 10, 1999), 9th Dist. No. 98CA007186, 1999 Ohio App. LEXIS 5311, at *7, 1999 WL 1037773 (citation omitted)." *Palac v. Smith*, 11th Dist. Trumbull No. 2005-T-0074, 2006-Ohio-5366, ¶37-39.

**{¶21}** Upon applying the governing case law, the trial court rejected his argument because his offer was not an unconditional tender.

**{¶22}** It is undisputed that Charles proposed to pay Sandra the proceeds of a loan in November 2010. At the time he made this proposal, however, the judgment

5

against him was not final; objections to the magistrate's decision were still pending. The trial court's final divorce decree adopting and modifying the magistrate's decision was issued on May 5, 2011. Thus, at the time of Charles' $150,000 proposal in November of 2010, there was no final judgment and no amount yet due on this obligation.

{¶23} Charles explained during his testimony that he was trying to be proactive at the time in trying to refinance the Kinsman property before the final divorce decree was issued. He stated had Sandra agreed, then the loan proceeds would have gone into an escrow account pending the final divorce decree.

{¶24} In support of his argument, he directed the court to the magistrate's findings of fact, supporting his prior efforts to pay Sandra. The magistrate's decision dated June 11, 2013, finds in part:

{¶25} "16. [Charles] attempted to obtain a loan from Huntington Bank before August 3, 2011. Huntington Bank declined to give him a personal loan * * *. However, Huntington Bank offered to lend [Charles] * * * money to buy [Sandra's] interest in 10289 Kinsman Rod, LLC. Plaintiff declined to sell her units in the LLC to [Charles] * * * because she believed that the transaction, structured as [Charles] had proposed, would have converted a non-taxable event, * * * into a taxable event * * *. Whether or not [Sandra] correctly analyzed the tax effects of that proposed transaction, the parties could not resolve this difficulty."

{¶26} Further, Sandra testified that she declined his $150,000 loan proposal because she believed it was illegal, which she explained stating that it was a commercial loan, not a personal loan to be used for personal liabilities. Sandra also described declining his $150,000 loan proposal because the Huntington Bank

6

representative told her she would have to pay taxes on the loan proceeds she received, with which she disagreed. Sandra did agree on cross-examination that she eventually sold her interest in this Kinsman property in 2013 to Charles for $176,000, but she denied it was the same type of loan arrangement with the bank.

{¶27} The limited evidence on this issue shows that Charles' proposed offer to Sandra was not an unconditional tender of an amount sufficient to pay his obligation. He did not present Sandra with a $150,000 check or cash. The bank's $150,000 loan was still an offer to Charles at the time he proposed Sandra accept the proceeds, and the bank's loan offer was subject to an appraisal of the property, among other requirements.

{¶28} Charles implies that the conditions present with the November 2010 loan and his offer to Sandra, i.e., an appraisal and securing Sandra's release of her interest in the subject property, were necessary prerequisites for him to fulfill his obligations under the court's final divorce decree. However, as the proponent of this proposition, Charles does not direct our attention to evidence in support.

{¶29} In *Braun v. Pikus*, 108 Ohio App.3d 29, 32-33, 669 N.E.2d 880 (8th Dist.1995), the Eighth Appellate District undertook a comparable analysis to determine if the debtor had made an unconditional tender or offer to pay the judgment against him while an appeal was pending. The court rejected the debtor's argument, explaining:

{¶30} "[T]he facts demonstrate that on two occasions, appellants attempted a tender, but, on both occasions, the tender failed: on October 5, 1993, because a release accompanied the check and because the sum did not include the costs, and on October

7

25, 1993, because the tender did not consist of the actual production of the sum then due. Thus, we conclude appellants have not made a tender in this case."

**{¶31}** The Eighth District further explained that "absent an unconditional offer of payment consisting of the actual production of the sum then due, R.C. 1343.03 requires the accumulation of interest * * *." *Braun v. Pikus*, 108 Ohio App.3d 29, 32-33, 669 N.E.2d 880 (8th Dist.1995).

**{¶32}** Accordingly, we do not find the trial court abused its discretion in finding that Charles did not make an unconditional tender to Sandra in November 2010 that stopped the running of post-judgment statutory interest. Its decision comports with reason and the record. His first assigned error lacks merit and is overruled.

**{¶33}** Charles' second assignment of error asserts:

**{¶34}** "The trial court erred in finding that Appellee should not be sanctioned for lying to the court about Appellant's failure to make the final payment of property division as the same is against the weight of the evidence and an abuse of discretion."

**{¶35}** Charles argues the trial court abused its discretion in failing to refer Sandra to the county prosecutor to be prosecuted for perjury for lying under oath at the December 30, 2016 hearing on interest. He claims she lied about receiving a portion of her property settlement, which is contrary to her prior sworn statement in an affidavit. The trial court denied Charles' motion via its March 21, 2017, decision.

**{¶36}** In response, Sandra first urges us to reject this assigned error because Charles' notice of appeal and docketing statement only identify the June 16, 2017 decision as the judgment entry being appealed, and as such, she asserts we lack

8

jurisdiction to consider the merits of his second assigned error arising from a decision not in his notice of appeal. We disagree.

{¶37} App.R. 3(D), "Content of the notice of appeal," states: "The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."

{¶38} Despite the mandatory nature of the language used in App.R. 3(D), the Ohio Supreme Court has considered this issue and found an appellate court has discretion to proceed with an appeal regardless of defects in a notice of appeal. *Transamerica Ins. Co. v. Nolan,* 72 Ohio St.3d 320, 649 N.E.2d 1229 (1995) syllabus. It explained:

{¶39} "Pursuant to App.R. 3(A), the only jurisdictional requirement for a valid appeal is the timely filing of a notice of appeal. When presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted, and its decision will not be overturned absent an abuse of discretion." *Id.*

{¶40} Further, Sandra does not allege that the denial of a motion to refer a matter to the prosecutor constitutes a final appealable order from which Charles had to file a direct appeal. R.C. 2505.02. Thus, notwithstanding Charles' failure to identify and attach the trial court's March 21, 2017, decision to his notice of appeal, we address the merits of his second assigned error.

{¶41} Charles filed his motion to refer Sandra's alleged perjury to the county prosecutor and for sanctions following the December 2016 evidentiary hearing. He

9

alleged that her testimony was blatantly false and inconsistent with the sworn averment in her affidavit filed with the court in October of 2014 relative to whether Charles' $7,139.60 payment was for outstanding interest he owed, or as satisfaction of his property settlement obligation.

{¶42} Upon construing Charles' motion as an affidavit under R.C. 2935.09, the magistrate concluded that Charles' claim that Sandra committed perjury lacks merit. Thus, the magistrate held he had no obligation to refer the matter for prosecution. Charles objected to the magistrate's decision and Sandra, in response, clarified her testimony in another affidavit attached to her motion to supplement the record. She attests in her later affidavit:

{¶43} "6. I did not knowingly attempt to mislead the court. Defendant's payments to me * * * [were] made in a number of different installments and in a number of different amounts[,] and I became confused in attempting to recollect those payments without the benefit of referring to bank records."

{¶44} Following objections, the trial court agreed and rejected Charles' request to refer Sandra for prosecution on the basis that his request did not comply with R.C. 2935.09, and as such, it had no obligation to refer the matter. We agree.

{¶45} R.C. 2935.09 states in part:

{¶46} "(B) In all cases not provided by sections 2935.02 to 2935.08 of the Revised Code, in order to cause the arrest or prosecution of a person charged with committing an offense in this state, a peace officer or a private citizen having knowledge of the facts *shall comply with this section*.

{¶47} "* * *

10

**{¶48}** "(D) A private citizen having knowledge of the facts who seeks to cause an arrest or prosecution under this section may file an *affidavit* charging the offense committed with a reviewing official for the purpose of review to determine if a complaint should be filed by the prosecuting attorney or attorney charged by law with the prosecution of offenses in the court or before the magistrate. A private citizen may file an affidavit charging the offense committed with the clerk of a court of record before or after the normal business hours of the reviewing officials if the clerk's office is open at those times. A clerk who receives an affidavit before or after the normal business hours of the reviewing officials shall forward it to a reviewing official when the reviewing official's normal business hours resume." (Emphasis added.)

**{¶49}** R.C. 2935.10 states:

**{¶50}** "(A) Upon the filing of an affidavit * * * as provided by section 2935.09 of the Revised Code, if it charges the commission of a felony, such judge, clerk, or magistrate, unless he has reason to believe that it was not filed in good faith, or the claim is not meritorious, shall forthwith issue a warrant for the arrest of the person charged in the affidavit, and directed to a peace officer; otherwise he shall forthwith refer the matter to the prosecuting attorney or other attorney charged by law with prosecution for investigation prior to the issuance of warrant."

**{¶51}** Charles did not file an affidavit, but instead filed a motion to refer Sandra for prosecution. Because Charles did not satisfy the statutory prerequisite in R.C. 2935.09(D), the trial court had no obligation to refer the matter for prosecution or to assess whether the allegations had merit. Accordingly, Charles' second assigned error lacks merit.

11

{¶52} The trial court's decisions are affirmed.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.