**Certiorari Granted, No. 31,724, July 1, 2009, Certiorari Denied, No. 31,725; June 22, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-065**

**Filing Date:  May 7, 2009**

**NO. 24,026; consolidated with 24,027; 24,042; and 24,425**


**ALBUQUERQUE COMMONS PARTNERSHIP,**

Petitioner-Appellee,

v.

**CITY COUNCIL OF THE CITY OF ALBUQUERQUE,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Susan M. Conway and William F. Lang, District Judges**


Mettler & LeCuyer, P.C.
Stephen T. LeCuyer
Albuquerque, NM

Bryan & Flynn-O'Brien
George R. Pat Bryan III
Timothy V. Flynn-O'Brien
Albuquerque, NM

Phillip B. Davis
Albuquerque, NM

for Appellee

Robert M. White, City Attorney
Mark Hirsch, Assistant City Attorney
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

Campbell & Wells, P.A.
John S. Campbell
Albuquerque, NM

Robinson & Cole LLP
Dwight H. Merriam
James A. Wade
Gregory W. McCracken
Hartford, CT

for Appellant

## OPINION

**CASTILLO, Judge.**

**{1}**     On motion for rehearing, the opinion filed October 30, 2008, is withdrawn, and the following opinion is substituted in its place.  The motion for rehearing is otherwise denied.

**{2}**     The operable event that forms the basis for these consolidated cases[1] occurred over thirteen years ago when the Albuquerque City Council (City) adopted the 1995 Uptown Sector Plan (1995 USP), which affected property leased by Albuquerque Commons Partnership (ACP).  Until 1995, the leased property was governed by the 1981 Uptown Sector Plan (1981 USP).  In 1991, ACP selected Opus Southwest Corporation (Opus) as the buyer for the leasehold.  Opus submitted a site plan for the property in June 1994 and then, in July 1994, withdrew the plan because of public outcry.  In September 1994, the City requested a comprehensive overview of the 1981 USP.  Before the City could complete the overview, Opus submitted another site plan (ACP/Opus site plan).  The City deferred consideration of the ACP/Opus site plan and implemented an expedited schedule to evaluate proposed revisions to the 1981 USP.  The City ultimately adopted the 1995 USP.

**{3}**     ACP sought review of the City's adoption of the 1995 USP in the trial court.  ACP also claimed damages under 42 U.S.C. § 1983 (2000) for violations of due process and for an unconstitutional taking in violation of the Fifth Amendment. Concluding that the 1995 USP was enacted contrary to law as applied to ACP, the trial court ordered the City to consider the ACP/Opus site plan under the 1981 USP.  The City complied and ultimately

---

The City separately appealed a jury verdict and two whole-record reviews that were conducted by the trial court of the City's decisions regarding ACP's development of the property.  On a motion by the City, we consolidated the three appeals.

rejected the ACP/Opus site plan under the 1981 USP. The claims for damages continued to trial, and the jury found for ACP on both the due process and the takings claims. The takings verdict was dismissed pursuant to the doctrine of election of remedies.

**{4}** ACP appealed to this Court, and we reversed. *Albuquerque Commons P'ship v. City Council of the City of Albuquerque (ACP II)*, 2006-NMCA-143, ¶ 2, 140 N.M. 751, 149 P.3d 67. Among other things, we held that (1) the City's adoption of the 1995 USP was a legislative act, (2) ACP was not entitled to quasi-judicial process, and (3) the City did not downzone ACP's property. *Id.* ¶¶ 36-39, 71. ACP appealed, and on certiorari our Supreme Court held that ACP's property was downzoned by the adoption of the 1995 USP and that as a result, the City had been required to provide ACP with quasi-judicial process. *Albuquerque Commons P'ship v. City Council of the City of Albuquerque (ACP III)*, 2008-NMSC-025, ¶¶ 33, 43, 144 N.M. 99, 184 P.3d 411. The Supreme Court went on to hold that because the City did not provide these enhanced procedures, ACP's right to due process had been violated and that the 1995 USP was not properly enacted. *Id.* ¶¶ 51-52. Finally, the Supreme Court concluded that the City had wrongfully denied ACP approval of the ACP/Opus site plan under the 1981 USP. *Id.* ¶¶ 58-59. The Supreme Court therefore reversed *ACP II* and remanded the case to this Court to make the following determinations: (1) whether ACP had a constitutionally protected property interest that would satisfy the threshold requirement for a Section 1983 claim, (2) whether the 1995 USP was an unconstitutional taking of ACP's property by the City, and (3) whether damages were properly awarded. *Id.* ¶¶ 53-60. We will also consider the City's challenges to the trial court's award of attorney fees and costs.[2] We address each issue in turn and hold as follows: (1) we affirm the jury award of damages in the amount of $8,349,095 to ACP on its Section 1983 claim; (2) we need not address the issues related to the takings verdict because we affirm the Section 1983 award; (3) we reverse the award of post-judgment interest; and (4) we affirm the trial court's award of attorney fees and costs.

**{5}** The facts surrounding the adoption of the 1995 USP, the resulting law suits, and the several appeals are set forth in *ACP II*, 2006-NMCA-143, ¶¶ 4-29, and in *ACP III*, 2008-NMSC-025, ¶¶ 4-20. We need not repeat the long and complicated history of the case. Instead, we rely on the short background summary that we have already recited and will include additional facts as necessary. We now turn to the remaining issues on appeal.

**DISCUSSION**

**A.    Section 1983 Claim**

**{6}** In order to prove its claim under Section 1983, ACP was required to show that the

---

2The City's appeal as to attorney fees and costs was a separate appeal before this Court. Before the Supreme Court filed *ACP III*, we reversed the trial court's allocation of costs and fees in a memorandum opinion. *Albuquerque Commons P'ship v. City Council of the City of Albuquerque*, No. 24,425, slip op. at 3 (N.M. Ct. App. Dec. 9, 2005). As a result of the holding in *ACP III*, we now consolidate the fees and costs appeal with the other three consolidated cases considered by the Supreme Court in *ACP III*.

3

City, "acting under color of state law, cause[d ACP] to be deprived of a federally protected constitutional right." *Miles v. Bd. of County Comm'rs*, 1998-NMCA-118, ¶ 6, 125 N.M. 608, 964 P.2d 169. ACP argued at trial that the protected constitutional right violated by the City was the right to procedural due process. The jury entered a verdict for ACP. In its appeal to this Court, the City challenges the due process verdict on the following grounds: (1) the trial court improperly found that ACP had a constitutionally protected property right; (2) procedural due process protections do not apply in the present case because the adoption of the 1995 USP was a legislative act, and ACP received all of the process that was due; (3) the Section 1983 claim was not ripe; and (4) the trial court improperly awarded damages. In addressing each argument, we look to the holdings of our Supreme Court in *ACP III*—that ACP's property was downzoned, that the City accomplished the downzoning in a manner that violated ACP's due process rights, and that the adoption of the 1995 USP required a quasi-judicial hearing. *ACP III*, 2008-NMSC-025, ¶¶ 43, 51. We begin with the nature of ACP's property right.

## 1.     Property Right

**{7}**     To establish a violation of procedural due process, ACP was required to show that the City deprived ACP of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Here, we focus on the property interest portion of the equation. In order to decide whether a party has a constitutionally protected property right, we first must determine whether there is a state-created substantive property right and then consider whether that right triggers federal due process protections. *Memphis Light, Gas & Water Div. v. Craft (Memphis Light)*, 436 U.S. 1, 10 (1978) ("Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." (internal quotation marks and citation omitted)).

### a.     State-Created Property Right

**{8}**     Our Supreme Court has explained that constitutionally protected "property interests are those to which an individual has a claim of entitlement." *Mills v. N.M. State Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶ 15, 123 N.M. 421, 941 P.2d 502. Although it is well settled under New Mexico law that a property owner has no vested right in a particular zoning classification, *Aragon & McCoy v. Albuquerque Nat'l Bank*, 99 N.M. 420, 423, 659 P.2d 306, 309 (1983), ACP relies on requirements associated with "downzoning" in order to establish a property right. According to ACP, because its property was downzoned, and not simply re-zoned, the City was required to establish a mistake in the original zoning or subsequent changed conditions in the neighborhood before the zoning could be legally changed. *Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976). The requirement enunciated in *Miller* is referred to as the "change or mistake" rule. Our Supreme Court agreed with ACP's position and held that "the City's actions did constitute a downzoning of [ACP's] property without complying with important standards set forth in *Miller* and *Davis* [*v. City of Albuquerque*, 98 N.M. 319, 321, 648 P.2d 777, 779 (1982)]." *ACP III*, 2008-NMSC-025, ¶ 2.

4

**{9}** In addition, the City's applicable zoning regulation—Resolution 270-1980— tracks the "change or mistake" requirement. *ACP III*, 2008-NMSC-025, ¶ 28. In order to implement a map amendment to a zoning classification, Resolution 270-1980 requires the City to "demonstrate that the existing zoning is inappropriate because (1) there was an error when the existing zone map pattern was created, or (2) changed neighborhood or community conditions justify the change, or (3) a different use category is more advantageous to the community." *ACP II*, 2006-NMCA-143, ¶ 64 (internal quotation marks and citation omitted). In the present case, the Supreme Court has held that the 1995 USP was a map amendment, which triggered the requirements of Resolution 270-1980. *ACP III*, 2008-NMSC-025, ¶ 50.

**{10}** Based on these New Mexico cases and Resolution 270-1980, we agree with the trial court that ACP had a right, under state law, to continued zoning in the face of downzoning or a map amendment unless the City was able to justify a zoning change under the requirements enunciated by Resolution 270-1980 and *Miller*. Accordingly, we conclude that ACP had a state-created property interest.

### b. Federal Protection

**{11}** The next inquiry is whether the federal constitution extends its protection to this state-created property right. A party claiming a federally protected property interest must have a "legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] legitimate claim of entitlement is created only when the statutes or regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Eidson v. Pierce*, 745 F.2d 453, 459-60 (7th Cir. 1984). In the context of municipal land use regulation, "[t]he entitlement analysis centers on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (internal quotation marks and citation omitted). Accordingly, we must decide whether the applicable law, Resolution 270-1980 or *Miller*, substantively limited the City's discretion to pass the 1995 USP. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence (Jacobs)*, 927 F.2d 1111, 1116 (10th Cir. 1991). "Otherwise, the city's decisionmaking lacks sufficient substantive limitations to invoke due process guarantees." *Id.*

**{12}** As we have explained, Resolution 270-1980 requires the City to justify zone map amendments by establishing (1) errors at the time the existing zone map pattern was created, or (2) changes in the neighborhood or community conditions that justify the amendment, or (3) that a different use category is more advantageous to the community. These are substantive and direct limitations on the City's discretion: By its own rules, the City cannot make a zone map amendment without demonstrating, in some fashion, at least one of these criteria. *See ACP III*, 2008-NMSC-025, ¶ 28 (stating that Resolution 270-1980 requires the proponent of a piecemeal downzoning to establish one of three criteria).

**{13}** In addition, *Miller* unequivocally limits the City's ability to downzone a particular piece of property. 89 N.M. at 506, 554 P.2d at 668. "[B]efore a piecemeal zoning change

5

is sought, the above principles and considerations *must be taken into account*, particularly when the zoning change of a piece of property is sought by the zoning authority instead of by the owner of the property affected." *Id.* (emphasis added) (internal quotation marks and citation omitted). The *ACP III* Court concluded that passage of the 1995 USP created a zone map amendment, 2008-NMSC-025, ¶ 50, and that it had the effect of downzoning ACP's property. *Id.* ¶ 43. The requirements of both Resolution 270-1980 and the requirements under *Miller* were therefore triggered; however, *ACP III* again provides guidance. Because rigid application of the *Miller* rule would "unduly impede the zoning authority's ability to make zoning decisions that are ultimately beneficial to the community at large," our Supreme Court concluded that the requirements of "Resolution 270-1980 adequately accommodate[] the need for planning and zoning flexibility." *ACP III*, 2008-NMSC-025, ¶ 30. As a result, it was necessary for the City to establish one of the three criteria set forth in Resolution 270-1980, including that "the change is more advantageous to the community, as articulated in the Comprehensive Plan or other City master plan." *Id.* (internal quotation marks and citation omitted).

**{14}** Our Supreme Court explained in *ACP III* that the zoning changes effected by the City in the present case "must be justified pursuant to the *Miller* rule and Resolution 270-1980" and that such changes "require specific factual findings relating to the affected properties." *ACP III*, 2008-NMSC-025, ¶ 32. The parties are entitled to individual notice, to "an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte contacts concerning the question at issue—and to a record made and adequate findings executed." *Id.* ¶ 34 (internal quotation marks and citation omitted). All of these procedural requirements are necessary in order for the City to properly establish the substantive criteria: change, mistake, or a more advantageous use category. *See id.* ¶ 30 (establishing the minimum "proof" required to demonstrate a more advantageous use category). When attempting to accomplish the type of downzoning at issue in this case, the City has no discretion to proceed without providing evidence to justify the change in accordance with these criteria. *See id.* ¶ 51 ("The [95 USP] Intense Core restrictions singled out a small section of the Uptown Sector and downzoned that area, requiring the City, as the proponent of the zone change, to justify that change in accordance with the criteria set forth in *Miller* and Resolution 270-1980.").

**{15}** The focus in this inquiry is not the City's failure or success in establishing change, mistake, or a more advantageous use. Rather, the property right is created in the language of the Resolution, *Miller*, *Davis*, and most recently, *ACP III*, all of which eliminate the City's discretion to engage in spot downzoning without considering the factors. *See ACP III*, 2008-NMSC-025, ¶ 32 ("[B]ecause such [spot downzoning] must be justified pursuant to the *Miller* rule and Resolution 270-1980 (or a similar local policy), they require specific factual findings relating to the affected properties."). To reiterate, any failure by the City to actually establish one of the criteria does not lead to a property deprivation or a due process violation redressable under Section 1983. Such a deprivation or violation only arises in the event that a party is denied notice or a meaningful opportunity to be heard.

**{16}** The City argues that it has enormous discretion in its application of the Resolution 270-1980 factors—particularly in the application of the "more advantageous use"

6

criterion—and that because the factors do not dictate the outcome of the City's spot downzoning decision, Resolution 270-1980 and *Miller* do not create a protected property right. We first observe that our Supreme Court has substantially narrowed the City's discretion in the application of this factor. In *ACP III*, the Court explained that the "proof" of a more advantageous use category "would have to show, at a minimum, that '(1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property.'" 2008-NMSC-025, ¶ 30 (quoting *Fasano v. Bd. of County Comm'rs of Wash. County*, 507 P.2d 23, 28 (Or. 1973), *superceded by statute as stated in Menges v. Bd. of County Comm'rs of Jackson County*, 606 P.2d 681 (Or. Ct. App. 1980)).

{17}   Second, we are not persuaded that the cases cited by the City require us to conclude that in order for ACP to have a federally protected property interest to be free from spot downzoning absent a *Miller*/*Davis*/Resolution 270-1980 inquiry, the outcome of the City's spot-zoning determination must be predetermined by the governing law. The City cites *Kentucky Department of Corrections v. Thompson* (*Thompson*), 490 U.S. 454 (1989), *Hyde Park Co.*, *Jacobs*, and *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810 (4th Cir. 1995).

{18}   In *Thompson*, the Supreme Court of the United States concluded that prison regulations did not place sufficient substantive limitations on the state's discretion to allow a prisoner to receive visitors. 490 U.S. at 464-65. As a result, the prisoner did not have a protected liberty interest in the regulations that allowed for visitors. *Id.* at 465. The Court explained that "the most common manner in which a [s]tate creates a liberty interest is by establishing substantive predicates to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* at 462 (internal quotation marks and citation omitted). Ultimately, the Court reasoned that "[t]he overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions." *Id.* at 464-65. The Court continued: "Or, to state it differently, the regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials." *Id.* at 465.

{19}   The City's reliance on *Thompson* is misplaced. First, the case concerns the constitutional rights of a prisoner, which have been construed narrowly over the past thirty years. *See* Ahmed A. White, *The Concept of "Less Eligibility" and the Social Function of Prison Violence in Class Society*, 56 Buff. L. Rev. 737, 777 (2008) ("[T]he courts made clear that, while they are not entirely beyond the realm of constitutional protection, prisoners only enjoy such constitutional rights as are consistent with legitimate penological interests; and that in determining what those interests are, courts must generally defer to the discretion of prison officials, granting them wide deference in fashioning and implementing penological policies." (internal quotation marks and footnotes omitted)). Second, the property right in the present case is the right to continued zoning in the face of spot downzoning, absent a showing of evidence under *Miller*/*Davis*/Resolution 270-1980. Considering the mandatory language in *Miller* and Resolution 270-1980, ACP could "reasonably form an objective expectation" that its zoning category would remain in effect absent evidence that could

7

establish at least one of the required criteria.  *See Thompson*, 490 U.S. at 465.

**{20}**    In *Hyde Park Co.*, the Tenth Circuit Court of Appeals was faced with a different factual scenario.  In that case, a developer applied to the City of Santa Fe for approval of a proposed subdivision plat.  226 F.3d at 1209.  The proposal was denied and the developer appealed, arguing that it had a constitutionally protected property right in approval of its plat. *Id.*  The *Hyde Park Co.* Court disagreed because "the applicable ordinances read as a whole fail to place any discernible substantive limitations on the [city's] discretion in this matter." *Id.* at 1212.  According to the ordinance in *Hyde Park Co.*, the city "had the power to affirm, reverse, or modify the . . . decision as ought to be made."  *Id.*  "Without clearly defined limitations on the [city's] exercise of discretion to assist [in the] construction of local law," the Tenth Circuit hesitated "to infer such limits and involve [a] federal court in a land use regulation dispute which is purely a matter of local concern."  *Id.*  In order to have demonstrated the requisite limitation on the city's discretion, the plaintiffs in *Hyde Park Co.* would have had to show that "a set of conditions exist under state and local law, the fulfillment of which would give rise to a legitimate expectation" of plat approval—the asserted federally protected right.  *Id.* at 1210 (internal quotation marks and citation omitted).

**{21}**    In the present case, ACP had to show a set of conditions existing under local law which, if fulfilled, would give rise to a legitimate expectation that the City would provide evidence regarding the zoning change according to *Miller* and Resolution 270-1980.  Unlike the ordinance in *Hyde Park Co.*, Resolution 270-1980 provides "clearly defined limitations" on the City's discretion to engage in spot downzoning, and there is no need to infer substantive limitations—those limitations are delineated in the ordinance.  *See* 226 F.3d at 1212.

**{22}**    In *Jacobs*, the Tenth Circuit Court of Appeals also considered whether a zoning body's discretion was sufficiently limited such that the parties had a "legitimate expectation to the rezoning of their property."  927 F.2d at 1116.  The landowners in that case argued that certain factors set out in a state court opinion were sufficient to limit the discretion of the city commissioners.  *Id.* at 1114, 1116.  The *Jacobs* Court disagreed because the state supreme court had acknowledged that the factors were not meant to be limits but, instead, "meant only as suggestions."  *Id.* at 1116.  Therefore, the state law did not "arm [the] appellants with sufficient rules or mutually explicit understandings that support [their] claim of entitlement."  *Id.* at 1117 (second alteration in original) (internal quotation marks and citation omitted).  The limitations set forth in *Miller* and in Resolution 270-1980 are not merely suggestions.  The *Miller* Court expressed in no uncertain terms that prior to piecemeal downzoning, the stated "principles and considerations must be taken into account."  89 N.M. at 506, 554 P.2d at 668.  Resolution 270-1980 states that the applicants "must demonstrate" at least one of the three requirements enumerated in the resolution.  The language of *Miller* and Resolution 270-1980 is sufficiently mandatory to support a claim of entitlement.

**{23}**    *Sylvia Development Corp.* is similar to *Hyde Park Co.* and *Jacobs*:  a developer applied to the county board of commissioners for a special zoning designation, which was

8

denied after vociferous public outcry. *Sylvia Dev. Corp.*, 48 F.3d at 815, 816. The developer appealed and argued, in relevant part, that it was entitled to approval of its application if all of the criteria set forth in the applicable zoning ordinance were met. *Id.* at 825-26. The Fourth Circuit Court disagreed for two reasons: (1) the county had complete discretion to create the requested special zoning designation because of permissive language in the ordinance and (2) the criteria in the zoning ordinance were merely preconditions to be met by an applicant before the county would consider creating a special zoning designation. *Id.* at 826. As we have explained, Resolution 270-1980 is neither permissive in its language nor does it outline preconditions that a property owner is required to meet. Instead, in the event of a spot downzoning, Resolution 270-1980 and *Miller* require the City to provide proof of the listed criteria. *See ACP III*, 2008-NMSC-025, ¶ 34 ("The burden is on the proponent of the zone change to establish that the change is justified.").

{24}   We note a further distinction between the present case and *Hyde Park Co.*, *Jacobs*, and *Sylvia Development Corp.* In these three federal cases, the plaintiffs sought to obtain an as yet non-existent benefit: approval of a plat, *Hyde Park Co.*, 226 F.3d at 1209, a zoning change, *Jacobs*, 927 F.2d at 1113, or a special zoning designation. *Sylvia Dev. Corp.*, 48 F.3d at 815. In the present case, ACP seeks to maintain an already existing benefit—a zoning classification—in the face of the City's attempt to downzone the property. *See ACP III*, 2008-NMSC-025, ¶ 43. "[P]rocedural protection of property has been recognized as a valid safeguard of 'interests that a person has already acquired in specific benefits' and as a means 'to protect those claims upon which people rely in their daily lives.'" *Jacobs*, 927 F.2d at 1118 (quoting *Roth*, 408 U.S. at 577). The City is required to justify piecemeal zone map amendments according to Resolution 270-1980 and piecemeal downzoning under *Miller*. That justification is a benefit that ACP acquired prior to the proposal and adoption of the 1995 USP. *See River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994) ("Those things people can hold or do without the government's aid count as property or liberty no matter what criteria the law provides.").

{25}   We consider the present case to bear a certain resemblance to *Memphis Light*. In that case, the United States Supreme Court considered whether homeowners had a constitutionally protected property interest in continued utility service. 436 U.S. at 3. The *Memphis Light* Court concluded that "[t]he outcome of that inquiry is clear in this case," *id.* at 9, because the law of the state did "not permit a public utility to terminate service 'at will.'" *Id.* at 11. Instead, in that state, a public utility could "terminate service only 'for cause.'" *Id.* As a result, the homeowner had a continued right to utility service until the public utility could establish cause to terminate service. *See id.* In the present case, the City could only adopt the 1995 USP if it could establish at least one of the requirements of Resolution 270-1980—just as the utility could only terminate service for cause. Neither ACP nor the homeowner had "rights of undisputed ownership." *Memphis Light*, 436 U.S. at 11 (internal quotation marks and citation omitted). Nevertheless, both parties asserted a "legitimate claim of entitlement within the protection of the Due Process Clause." *Id.* at 12 (internal quotation marks and citation omitted).

{26}   Although ACP's pre-existing benefit, or entitlement, is limited and is triggered only under the conditions explained in *Miller* or outlined in Resolution 270-1980, we conclude

9

that ACP has a federally protected property interest to continued zoning under the narrow circumstances presented by this case. Accordingly, we turn next to consider whether ACP received all of the process that it was due in order to protect its property right.

## 2. Process Due

**{27}** We next consider whether the process provided by the City was sufficient to safeguard ACP's constitutionally protected property right. The City argues that ACP received all of the process that was due because the City provided and ACP participated in seven hearings about the adoption of the 1995 USP. Further, the City argues that because the adoption of the 1995 USP was a legislative act, constitutional due process was not required. We first note that our Supreme Court held in *ACP III* that the adoption of the 1995 USP was a quasi-judicial, and not a legislative, act. *ACP III*, 2008-NMSC-025, ¶¶ 37-39, 43.

**{28}** We also observe that our Supreme Court in *ACP III* outlined the quasi-judicial hearing process to which piecemeal or spot downzoned property owners are entitled. 2008-NMSC-025, ¶ 34. While this process is certainly necessary to satisfy state law, Section 1983 actions are brought under federal law. The United States Supreme Court has explained that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). The *Olim* Court concluded that while a state may choose to require certain procedures, "making that choice . . . does not create an independent substantive right." *Id.* at 250-51. In particular, the characterization of a zoning process as quasi-judicial does not engender the "expectation of a property interest or otherwise place substantive limitations on official discretion." *Jacobs*, 927 F.2d at 1117. From these authorities, we conclude that the failure to hold a particular type of hearing was not by itself a failure of due process actionable under Section 1983.

**{29}** "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted), *abrogated on other grounds as recognized by State v. Gonzales*, 2001-NMCA-025, ¶ 58 & n.1, 130 N.M. 341, 24 P.3d 776. "[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334; *see also Erica, Inc. v. N.M. Regulation & Licensing Dep't, Alcohol & Gaming Div.*, 2008-NMCA-065, ¶ 27, 144 N.M. 132, 184 P.3d 444. That analysis includes three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. We have already identified ACP's private interest: the right to

10

continued zoning unless the City can justify downzoning according to the requirements of Resolution 270-1980.

**{30}** The second factor considers (1) the risk of erroneous deprivation absent the requested procedure and (2) the probative value of the additional safeguard. To analyze the second factor, we must first consider what procedure ACP requested. The City points out that ACP had an opportunity to participate in seven hearings and that seven hearings satisfied any procedural due process right. ACP disagrees.

**{31}** In order to resolve this issue, we need only turn to one aspect of the hearing—the type of tribunal. During its review of the downzoning issue, our Supreme Court concluded that the City made "no effort to provide ACP with an impartial tribunal by limiting *ex parte* contacts on the part of the council members." 2008-NMSC-025, ¶ 36. The question remains, however, whether an impartial tribunal would substantially reduce the risk of erroneous deprivation of ACP's protected right and what the probable value of an impartial tribunal would be.

**{32}** It is well established that "a fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (internal quotation marks and citation omitted). Our Supreme Court has determined that the City Council was a biased tribunal. *ACP III*, 2008-NMSC-025, ¶ 36. Hearings before a biased tribunal create a substantial risk of erroneous deprivation. *See NM Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 16 P.3d 947 ("Procedural due process requires a fair and impartial hearing before a trier of fact who is disinterested and free from any form of bias or predisposition regarding the outcome of the case." (internal quotation marks and citation omitted)). The present case exemplifies the risk. The City perceived itself to be conducting a legislative hearing. While a quasi-judicial hearing is not required to satisfy due process, a legislative hearing before a legislative tribunal led to actual ex parte contact in this case. *See Withrow*, 421 U.S. at 47 (explaining that a contention of bias "must overcome a presumption of honesty and integrity of those serving as adjudicators"). Prior to the adoption of the 1995 USP, a non-counselor contacted a counselor—outside of the hearings—and "encouraged" her not to propose amendments to the 1995 USP that would have allowed ACP to proceed with its project. *ACP III*, 2008-NMSC-025, ¶ 36 n. 3. The counselor acted on the contact, withdrawing her proposed amendments. *Id.* Thus, this ex parte contact had a direct, negative effect on ACP's protected property right, and an impartial tribunal would have had a great deal of value as an additional safeguard.

**{33}** Analysis of the third factor shows that there is no added burden on the City to provide a meaningful opportunity to be heard before an impartial tribunal. Taking all of the factors together, we conclude that the balance weighs in favor of providing a property owner with an impartial tribunal—one free from ex parte contacts—prior to implementing a piecemeal downzone.

### 3.     Adequacy of State Remedies

**{34}** Despite our holding that the City's procedure failed to provide ACP with adequate

11

process to protect its property rights, we continue our analysis to determine whether ACP properly established a Section 1983 cause of action in light of available state-law remedies. *See Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 19, 140 N.M. 136, 140 P.3d 1085 (explaining that "not all deprivations of property interests, even if they are in violation of state law, are actionable under [Section] 1983" because plaintiffs must show that "state remedies provided inadequate procedural safeguards"). The City makes two arguments in this regard: (1) a due process deprivation is not complete until the process has failed and whether the process has failed cannot be determined until the deprived party has navigated the entire system of available state appeals and (2) any procedural error that may have occurred in the present case was simply a mistake and "is not tantamount to a violation of a federal right." We address each argument in turn.

{35}    The City's first argument is based on the multiple levels of state court review that were available to ACP after the 95 USP passed. The City contends that at the first level of review in the district court, ACP argued against remand for the City to conduct a quasi-judicial review of the ACP/Opus site plan. Thus, the City argues, any due process violation was never complete because review of the passage of the 95 USP was available in the district court, this Court, and our Supreme Court, and ACP refused to participate in that procedure. ACP maintains that no state remedy was available to adequately address its loss. With this argument, ACP appears to focus on its financial loss rather than on any due process violation. It is well established that "[a]lthough the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under [Section] 1983, that does not mean that the state remedies were not adequate to satisfy the requirements of due process." *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Having disposed of ACP's challenge to the adequacy of the available state remedies to address the financial loss, we turn to consider whether the state appellate process was adequate to address the due process violation in the present case.

{36}    The Supreme Court of the United States has explained that in some cases, "due process requires a predeprivation hearing before the [s]tate interferes with any liberty or property interest enjoyed by its citizens," *id.* at 537, and, as a result, state appellate procedures are not sufficient to cure a due process violation. In such cases, "deprivations of property [are] authorized by an established state procedure and due process [requires] predeprivation notice and [a] hearing in order to serve as a check on the possibility that a wrongful deprivation [c]ould occur." *Id.* at 538. In other cases, for example in *Parratt* itself, "random and unauthorized" state acts that lead to deprivations of property are cured by a postdeprivation hearing—or an appeal— because a predeprivation hearing is impractical. *Id.* at 541, 543. We thus consider whether the City's actions were random and unauthorized in order to determine whether the available appellate process was a constitutionally sufficient remedy for ACP's due process deprivation.

{37}    The City cites *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), which held that a biased decisionmaker is an inherently random and unauthorized act because bias is not sanctioned by the state. *Id.* at 1563. As a result, the *McKinney* court concluded that the plaintiff was not deprived of due process unless the state refused to address the alleged bias

12

on appeal from the administrative proceeding. *See id.* at 1562. We are unpersuaded by *McKinney* for two reasons.

**{38}** First, *McKinney* was decided in the context of employment termination proceedings and the long line of cases that establish a fired employee's due process rights. *Id.* ("[I]n the case of an employment termination case, due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available the means by which [the employee] can receive redress for the deprivations." (internal quotation marks and citation omitted)). Second, although the logic of *McKinney* is superficially attactive—that a biased tribunal is inherently not authorized by the state—the facts of the present case do not bear out this presumption. The City's improper process was neither unpredictable nor the result of the rogue actions of one city councilor. The City chose to proceed by legislative hearings—a procedure that did not provide an impartial tribunal and allowed for ex parte contact. In addition, we are faced with the rare circumstance of having allegations of bias borne out by the record: a city councilor had indicated one course of action, was contacted by a constituent with an opposing view, and after that contact, the councilor changed her position and her vote. *See ACP III*, 2008-NMSC-025, ¶ 36 n.3. The decision to proceed legislatively is not sufficient alone to create a due process violation; it is possible that a legislative hearing could provide a meaningful opportunity to be heard or could be conducted without evidence of ex parte contact resulting in improper influence. Under the facts of the present case, however, as recognized by our Supreme Court in *ACP III*, there is substantial evidence to support the jury's decision that ACP did not receive an impartial tribunal and that the flawed process was selected and endorsed as an official act of the whole governmental power of the City. *See id.* As a result, we are unpersuaded by the presumption applied in *McKinney*.

**{39}** The present circumstances are more closely aligned with *Zinermon v. Burch*, 494 U.S. 113 (1990). The plaintiff in *Zinermon* was admitted as a voluntary mental patient even though he was incompetent to provide informed consent for his admission. *Id.* at 114-15. The defendants argued that a postdeprivation remedy was sufficient, in lieu of a Section 1983 action, because the constitutional deprivation was the result of a random and unauthorized action by a state employee. *Id.* at 115. The Supreme Court of the United States explained that generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id.* at 127. The random and unauthorized rule articulated in *Parratt* represents "a special case . . . in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the [s]tate could be expected to provide." *Zinermon*, 494 U.S. at 128. In *Zinermon*, the state statute delegated broad authority to hospitals to admit patients, effectively without informed consent. *Id.* at 135. As a result, the hospital staff had "state authority to deprive persons of liberty [and] the Constitution imposed on them the [s]tate's concomitant duty to see that no deprivation occur without adequate procedural protections." *Id.* The *Zinermon* Court concluded that the postdeprivation procedures were inadequate because the deprivation was not unpredictable, predeprivation procedures were not impossible, and the deprivation was not unauthorized. *Id.* at 136-38.

**{40}** In the present case, the City—as it strenuously argues—has broad authority to make

13

zoning decisions that can lead to deprivations of constitutionally protected property rights. Part and parcel with that authority is the duty to provide adequate predeprivation procedural protections. Similar to the deprivation in *Zinernon*, an impermissibly biased tribunal was not unpredictable: the City's decision to proceed legislatively carried with it the risk of ex parte contact and bias and, based on the record, the risk was elevated to reality. In addition, it was not impossible for the City to provide an unbiased tribunal. In *Parratt*, the deprivation involved the loss of personal property by prison officials—an action which was impossible for the state to predict and prevent by predeprivation hearing. 451 U.S. at 541. In the present case, the City was contemplating spot downzoning of ACP's property, had a working knowledge of the common procedures involved in legislative hearings, and could have anticipated that councilors would be contacted outside of the official proceedings. It cannot be said that the instance of actual bias that resulted from the procedures employed was unpredictable. Finally, we have already addressed the argument that the biased tribunal was unauthorized and need not repeat our analysis here.

**{41}** We now reach the City's second argument, which concerns the decision to proceed legislatively. The City maintains that its decision to proceed legislatively was merely a procedural error that does not rise to the level of a constitutional violation and that if ACP is permitted to recover under Section 1983 based on a procedural flaw in the proceedings, property owners will have "the unilateral option to cash in on any procedural flaw in an administrative proceeding by declining remand and pursuing a [Section] 1983 action." We disagree.

**{42}** The bias in the present case was more than a procedural flaw because ACP had a protected property interest, it was entitled to due process, and there is evidence of actual bias in the process afforded by the City. An unbiased tribunal was a constitutional requirement in the present case. *See* 1 E.C. Yokley, *Zoning Law and Practice* § 3A-1[d], at 3A-23 (4th ed. 2008) ("Procedural due process, however, will apply where a decision is administrative or quasi-judicial *and* the property owner has an entitlement rather than an expectancy to whatever he or she sought." (footnotes omitted)). In addition, the decision to proceed under Section 1983, rather than to pursue administrative remedies, is a tactical and risk-laden choice. *See* 2 Steven H. Steinglass, *Section 1983 Litigation in State Courts* § 17:3, at 17-7 to 17-8 (2008) (discussing the tactical reasons for resorting to a Section 1983 action or for voluntarily submitting claims to administrative proceedings). The litigant takes the risk of receiving no remedy at all should he neglect to pursue administrative remedies, and the Section 1983 action may be blocked by the myriad of requirements that stand between a plaintiff and relief.

**{43}** We recognize that other courts have concluded that minimal process is due under the Constitution in zoning cases and that a municipality's failure to provide the process required under local law is a matter for state courts, not Section 1983. *See River Park, Inc.*, 23 F.3d at 166-67. The *River Park, Inc.* court succinctly explained that "the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." *Id.* at 167. Nevertheless, our analysis of the present case leads to the conclusion that ACP had a property right that was to be afforded federal due process protections. Due process

requires notice of the pending deprivation and a meaningful opportunity to be heard. In the present case, the meaningful opportunity to be heard was foreclosed by evidence of actual and impermissible bias on the tribunal—bias that was the foreseeable result of the political process chosen by the City as its official act to effectuate the deprivation of ACP's property. Under the unusual circumstances of this case, we therefore hold that ACP's Section 1983 action was not foreclosed by available state remedies and that the City's failure to provide ACP with an impartial tribunal violated ACP's right to procedural due process. *See ACP III*, 2008-NMSC-025, ¶ 52 ("[T]he City's decision lacked procedural fairness and did not comport with due process of law.").

### 4. Ripeness of the Section 1983 Claim

**{44}** The City contends that because ACP prevailed on both the due process and the takings issues at trial, ACP cannot recover damages for the Section 1983 claim until it has attempted to recover compensation for the taking. As a result of ACP's failure to seek recovery for the taking, the City argues that the due process claim is not ripe. For support, the City cites *Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners (Rocky Mountain)*, 972 F.2d 309 (10th Cir. 1992). In that case, the Tenth Circuit provided the following explanation:

> When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim. It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause. Accordingly, until a plaintiff has resorted to the condemnation procedures to recover compensation for the alleged taking, the procedural due process claim is likewise not ripe because it is in essence based on the same deprivation.

*Id.* at 311 (internal quotation marks and citation omitted). ACP argues that (1) federal ripeness jurisprudence does not apply, (2) the takings claim was not coextensive with the due process claim, and (3) no state remedy existed for the takings claim, and ACP was therefore not required to pursue a non-existent remedy. For the reasons listed below, we agree with ACP that the takings claim and the due process claim were not coextensive, and we therefore do not address ACP's other points.

**{45}** *Rocky Mountain* identified two sets of circumstances. In one scenario, the loss of the property interest is the same loss upon which the takings claims is premised. *Id.* This is the scenario which the City argues is similar to the present case. However, *Rocky Mountain* goes on to explain that "[t]here are many intangible [property] rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments." *Id.* (alterations in original) (internal quotation marks and citation omitted).

15

**{46}**     In the present case, the property right that forms the basis for the due process claim is an intangible right—the right to continuation of a certain zoning classification until the City can establish specific circumstances, as we have identified in preceding paragraphs. ACP's loss resulting from the due process violation was a loss of opportunity to meaningfully participate in a hearing related to the adoption of the 1995 USP. Our Supreme Court has determined that ACP's deprivation of this meaningful hearing resulted in its inability to develop its property. *See ACP III*, 2008-NMSC-025, ¶ 59. The jury was instructed accordingly on damages for that claim:  place ACP in the position it would have been in had it been permitted to develop its property as proposed. The basis for the takings claim was that the passage of the 1995 USP did not advance a legitimate public interest and deprived ACP of all economically viable use of the property without compensation. The takings damages instruction directed the jury to award the value of the use of the property taken. The differences between the claims were reflected in the jury's verdict on damages—six million dollars for takings and more than eight million dollars for due process. It is further apparent that the right to receive meaningful process could not be redressed by the remedy for the takings claim—adequate compensation for deprivation of the use of property. We therefore conclude that the two claims were not coextensive and that ACP was under no obligation to seek condemnation and compensation before recovering damages for the due process violation.

### 5.     Damages Under the Section 1983 Claim

**{47}**     In Section 1983 cases, the plaintiff must prove a causal connection between the wrongful conduct and the injury in order to justify an award of compensatory damages. *Jacobs v. Meister*, 108 N.M. 488, 495-96, 775 P.2d 254, 261-62 (Ct. App. 1989), *disapproved of on other grounds by Carrillo v. Rostro*, 114 N.M. 607, 623 n.16, 845 P.2d 130, 146 n.16 (1992). The City contends that ACP's evidence relating to damages measured only the loss of profit that resulted from the inability to develop the property as planned. Specifically, the City argues that ACP was required to prove that if the City had provided due process, the 1995 USP would not have been approved and that the ACP/Opus site plan would have been approved under the 1981 USP. We disagree.

**{48}**     "It is recognized that a Section 1983 action is a species of tort liability, and that the common law of tort damages will be a starting point for Section 1983 damages[.]" *Wells v. County of Valencia*, 98 N.M. 3, 5, 644 P.2d 517, 519 (1982). Our Supreme Court has explained that according to long-established principles of tort law, "the purpose of compensatory damages is to make an injured person whole." *Lovelace Medical Center v. Mendez*, 111 N.M. 336, 349, 805 P.2d 603, 616 (1991). The *Mendez* Court continued and stated that "one of the functions of compensatory damages is to indemnify the injured party against financial losses proximately caused by the negligence of another." *Id.* Thus, in the context of the present case, ACP was required to prove that its financial losses were caused by the City's actions.

**{49}**     As we have explained, the City failed to provide adequate process to protect ACP's constitutionally protected property right and, therefore, the passage of the 1995 USP violated ACP's due process rights. Absent the improperly passed 1995 USP, the 1981 USP governed

the ACP/Opus site plan. Consequently, we turn to whether the ACP/Opus site plan would have been approved under the 1981 USP.

**{50}** In *ACP III*, the Supreme Court determined that

> [t]he record shows that the [ACP/]Opus site plan, though it needed some adjustments (adjustments that were in the process of being made at the time the City imposed the moratorium to consider the 1995 [USP] amendments), complied with the requirements of the 1981 [USP] and was no different from a number of projects that the City had previously allowed under that sector plan.

2008-NMSC-025, ¶ 59. This statement by our Supreme Court is the law of the case. "Under the law of the case doctrine, if an appellate court has considered and passed upon a question of law and remanded the case for further proceedings, the legal question so resolved will not be determined in a different manner on a subsequent appeal." *Scanlon v. Las Cruces Pub. Sch.*, 2007-NMCA-150, ¶ 7, 143 N.M. 48, 172 P.3d 185 (alterations omitted) (internal quotation marks and citation omitted). We therefore conclude that the ACP/Opus site plan would have been approved according to the 1981 USP, *see ACP III*, 2008-NMSC-025, ¶ 58, and that ACP proved that its financial losses were caused by the City's failure to provide adequate process.

**{51}** The City also briefly contends that ACP did not prove a portion of the damages related to reimbursement of a percentage of funds used to construct a road. The Supreme Court did not address this argument in *ACP III*, and we thus consider whether ACP provided substantial evidence to support the jury's verdict that ACP's damages were caused by the City's actions. The City argues that there was no agreement that the City would reimburse ACP for construction of Loop Road, a road adjacent to the site, and that damages related to the road were improperly awarded based on ACP's assumption that the City would reimburse for road construction costs. The record supports ACP's assumption in that there was evidence at trial that the City had paid a percentage of another access road, that the City had identified the cost of such a road as a cost to the City, and that the 1981 USP required public financing of the road. Accordingly, we conclude that ACP put on evidence to support the jury's assessment of damages in this regard.

**B.    Post-Judgment Interest**

**{52}** We review the trial court's construction of the post-judgment interest statutes de novo. *Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 36, 142 N.M. 346, 165 P.3d 343. New Mexico is somewhat unique in how it handles the payment of post-judgment interest by the state and its political subdivisions. We look to NMSA 1978, § 56-8-4(D) (2004), which exempts the state and political subdivisions from paying post-judgment interest unless otherwise provided by statute or case law. This statute has been construed narrowly, and in order for a prevailing party to recover post-judgment interest from the state or a political subdivision, our courts have required an explicit waiver of sovereign immunity. *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 23, 136 N.M. 647, 103 P.3d 571 (refusing to

17

award post-judgment interest when immunity from post-judgment interest is not expressly waived); *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 47, 125 N.M. 721, 965 P.2d 305 (same). The City argues that because Section 1983 and 42 U.S.C. § 1988 (2000) do not provide for post-judgment interest, the trial court improperly assessed post-judgment interest. ACP counters that post-judgment interest is mandatory in Section 1983 actions filed in federal court and that it should therefore be allowed in state proceedings. We agree with the City.

**{53}** As the City recognizes, post-judgment interest is routinely awarded in Section 1983 cases filed in federal court. The basis for those awards, however, is 28 U.S.C. § 1961 (2000). *See, e.g.*, *Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1423 (10th Cir. 1990) ("[I]nterest shall be allowed on any money judgment in a civil case recovered in a [federal] district court." (internal quotation marks and citation omitted)); *see also* 28 U.S.C. § 451 (1982) (defining "district court" according to Title 5 of Chapter 28 U.S.C. in which 28 U.S.C.§ 132 (1963) describes a district court as "a court of record known as the United States District Court for the district"). Section 1961(c)(4) explicitly provides that it "shall not be construed to affect the interest on any judgment of any court not specified in this section." State courts are not specified in the section; therefore, there is no basis on which to apply the terms of Section 1961 to a Section 1983 claim filed in state court. It becomes clear that the federal precedent which permits post-judgment interest in Section 1983 claims does not supply the necessary authority to satisfy the mandate of New Mexico's Section 56-8-4(D). Apart from the requirements of Section 1961, ACP provides no federal or state authority to establish that prevailing parties in Section 1983 claims filed in state court are entitled to payments of post-judgment interest by a political subdivision of the state. We, too, have researched federal law and can find no additional authority for such a proposition.

**{54}** We have also conducted a survey of the law in other states. The majority of jurisdictions do permit the recovery of post-judgment interest against the state or political subdivisions, either by statute, by case law, or by both. *See* Alaska Stat. § 09.50.280 (1997); Ariz. Rev. Stat. § 12-823 (1984); 735 Ill. Comp. Stat. 5/2-1303 (1987); Ind. Code § 34-54-8-5 (1998); Kan. Stat. Ann. § 16-204 (1996); N.Y. State Finance Law § 16 (1982); Okla. Stat. tit. 12, § 727.1(B) (2004); Tenn. Code Ann. § 9-8-307(d) (2005); *State of Ala. Highway Dep't v. Milton Constr. Co.*, 586 So. 2d 872, 876 (Ala. 1991); *Ca. Fed. Sav. & Loan Ass'n v. City of Los Angeles*, 902 P.2d 297, 300 (Cal. 1995); *Palm Beach County v. Town of Palm Beach*, 579 So. 2d 719, 720 (Fla. 1991); *Profit Recovery Group, USA, Inc. v. Comm'r, Dep't of Admin. & Fin. Servs.*, 2005 MC 58, ¶¶ 32-33, 871 A.2d 1237; *Md. State Highway Admin. v. Kim*, 726 A.2d 238, 241(Md. 1999); *Lienhard v. State*, 431 N.W.2d 861, 865-66 (Minn. 1988); *City of Jackson v. Williamson*, 95-CT-01072-SCT (¶¶ 14-15) 740 So. 2d 818, 821-22 (Miss. 1999); *Nault v. N & L Dev. Co.*, 767 A.2d 406, 407, 409 (N.H. 2001); *Judy v. Ohio Bureau of Motor Vehicles*, 100 Ohio St. 3d 122, 2003-Ohio-5277, 797 N.E.2d 45, at ¶ 32; *Woods v. Dep't of Transp.*, 641 A.2d 633, 635 (Pa. Commw. Ct. 1994); *Mulvaney v. Napolitano*, 671 A.2d 312, 313 (R.I. 1995); *Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 140 (Utah Ct. App. 1997).

**{55}** There are a handful of other states that, as a general proposition, do not permit

successful plaintiffs to recover post-judgment interest on verdicts against the state. *See Chun v. Bd. of Trs. of the Employees' Ret. Sys.*, 106 P.3d 339, 356 (Haw. 2005) (requiring express statutory relinquishment of the state's sovereign immunity from post-judgment interest); *Kenton County Fiscal Ct. v. Elfers*, 981 S.W.2d 553, 559-60 (Ky. Ct. App. 1998); *C & M Constr. Co. v. Commonwealth*, 486 N.E.2d 54, 56 (Mass. 1985); *Our Lady of Lourdes Hosp. v. Franklin County*, 842 P.2d 956, 966 (Wash. 1993) (en banc). Montana is unique in that it provides a grace period of sorts. Its legislature has directed that under most circumstances, "if a governmental entity pays a judgment within 2 years after the day on which the judgment is entered, no penalty or interest may be assessed." Mont. Code Ann. § 2-9-317 (1997).

**{56}** None of the states with law comparable to New Mexico have addressed the specific question of post-judgment interest in a Section 1983 case filed in state court. Our research thus reveals that there is no support for ACP's position that the City is required to pay post-judgment interest in this case.

**{57}** ACP argues that the denial of post-judgment interest for Section 1983 claims brought in state court will have a twofold effect. First, ACP quotes *Wells* to argue that "[t]he Legislature cannot enact a law which would have the practical effect of depriving a party of his rights secured by the United States Constitution." 98 N.M. at 7, 644 P.2d at 521. We note that Section 56-8-4(D) circumscribes only a party's ability to collect post-judgment interest against the state and political subdivisions; in no way does the statute prevent a party from bringing a cause of action against the state or its political subdivision in order to vindicate constitutional rights. Second, ACP contends that "[s]tate law that creates different outcomes in federal and state court cannot be given effect." For support, ACP cites *Felder v. Casey*, 487 U.S. 131 (1988). *Felder* considered whether a party must comply with a state's pleading procedures in order to properly bring a Section 1983 claim. *Felder*, 487 U.S. at 138. The United States Supreme Court held that

> [b]ecause the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of [Section] 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in [Section] 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the [Section] 1983 action is brought in a state court.

*Id.* We do not believe that the New Mexico prohibition against the recovery of post-judgment interest against the state and political subdivisions "conflicts in both its purpose and effects with the remedial objectives of [Section] 1983." *Id.* The remedial objectives of Section 1983 are certainly achieved when a plaintiff successfully brings suit for damages against the state to vindicate constitutional rights. The recovery of post-judgment interest operates only as an enforcement mechanism to encourage the timely payment of damages after judgment has been entered. *See Bird*, 2007-NMCA-088, ¶ 42 ("An award of post-judgment interest serves three purposes: compensating the plaintiff for being deprived of compensation from the time of the judgment until payment . . . by the defendant,

19

discouraging unsuccessful defendants from pursuing frivolous appeals, and minimizing court supervision of the execution of judgments." (internal quotation marks and citation omitted)). We therefore hold that the trial court improperly granted ACP post-judgment interest. Because post-judgment interest is not permissible under Section 56-8-4(D) in these circumstances, we need not consider whether the interest was properly assessed according to the state, and not the federal, interest rate.

## C.       Attorney Fees and Costs

### 1.       Recovery Under Section 1988 For State Law Claims

**{58}**      The City first contends that the trial court improperly awarded attorney fees for the first administrative appeal under Section 1988, which only allows recovery for federal civil rights actions. *See N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 12 (1986) ("On its face, [Section] 1988 does not authorize a court to award attorney's fees except in an action to enforce the listed civil rights laws."); *Bogan v. Sandoval County Planning & Zoning Comm'n*, 119 N.M. 334, 345, 890 P.2d 395, 406 (Ct. App. 1994) (explaining that a "plaintiff must prevail on some federal civil rights claim in order to be eligible for a fee award" under Section 1988). We review the trial court's award of attorney fees for abuse of discretion. *Nava*, 2004-NMSC-039, ¶ 24. In the first administrative appeal, the trial court determined that the City was required to review ACP's proposal under the 1981 USP and not the 1995 USP. The City's position is that no part of the first administrative appeal was necessary in order to vindicate ACP's civil rights. Instead, the City claims that the "sole issue under the petition . . . was an appellate review of the action of the City Council to determine the validity of a zoning decision—the adoption of the 1995 [USP]."

**{59}**      ACP contends that without the work performed for the first administrative appeal, the civil rights claim would not have been successful. The trial court agreed and found that "virtually everything [in the first administrative appeal] focused on whether there was a downzone." As we discussed above, ACP's identifiable property right is to be free from downzoning unless the City can establish certain criteria. Therefore, there was no abuse of discretion to permit attorney fees for the first administrative appeal because that appeal decided an issue that was crucial to the later and successful constitutional claim. *See N.C. Dep't of Transp.*, 479 U.S. at 15 ("A court hearing one of the civil rights claims covered by [Section] 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation.").

### 2.       Costs

**{60}**      The City next argues that specific costs awarded by the trial court were either (1) improperly categorized in the cost bill or (2) not recoverable under state or federal law. We review a trial court's determination of costs for abuse of discretion. *Bird*, 2007-NMCA-088, ¶ 27. In a Section 1983 action brought in state court, the prevailing party may recover some expenses of litigation under either federal or state law. Federal law permits the prevailing party to recover attorney fees under Section 1988, and fees may include "reasonable out-of-

pocket expenses not normally absorbed as part of law firm overhead." *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000). These costs under Section 1988 are considered to be included in the award of attorney fees; therefore, amounts paid to third parties who are not attorneys are not recoverable under Section 1988. *Brown*, 227 F.3d at 1297. However, other costs may be awarded under the general costs statute. *See id.* Also, Rule 1-054(D)(2) NMRA permits the recovery of certain costs under state law. It includes the recovery of the following expenses under certain circumstances: filing fees; fees for service of summonses, subpoenas, writs and other service of process; jury fees; transcript fees including those for daily transcripts and transcripts of hearings prior or subsequent to trial; the cost of a deposition if any part is used at trial or in successful support or defense of a motion for summary judgment; witness mileage or travel fare and per diem expenses; expert witness fees for services; translator fees; reasonable expenses involved in the production of exhibits admitted into evidence; official certification fees for documents admitted into evidence; and interpreter fees for judicial proceedings and depositions.

**{61}** The City contends that ACP improperly categorized some expenses under Section 1988 that were not recoverable under that section and other expenses under Rule 1-054 that were not permitted under that rule. The trial court concluded that any improper categorization of the requests did not "require that the request be disallowed [i]f it is otherwise compensable under the law." Although ACP acknowledges that it claimed some items under both statutes, it repeatedly asserted that double recovery was not sought for expenses that were claimed under both laws. We agree with the trial court that if certain costs were permissible under any law—federal or state—ACP was entitled to recover those costs. *See* Rule 1-054(D)(1) ("[C]osts, other than attorney fees, shall be allowed to the prevailing party unless the court otherwise directs[.]"). We therefore review each of the City's arguments regarding whether a particular expense is allowable under either Section 1988 or Rule 1-054(D).

**{62}** The City disputes the trial court's award of copy costs, subpoena fees, and transcript fees. These arguments are without merit because either Rule 1-054(D)(2) or Section 1988 permit the recovery of these costs, and the City admits that copy costs are billed through as attorney fees. *See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998) ("Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate."); *see also* Rule 1-054(D)(2)(b) (permitting the recovery of subpoena fees); Rule 1-054(D)(2)(d) (permitting the recovery of transcript fees); *H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 27, 143 N.M. 404, 176 P.3d 1136 (holding that Rule 1-054(D)(2)(d) does not require advance approval of transcript requests in order for the cost to be recoverable).

**{63}** The City also challenges the trial court's award of mediation fees and deposition costs. Section 1988 and Rule 1-054(D) are silent with regard to mediation costs. New Mexico trial courts are cautioned that "[c]osts generally are recoverable only as allowed by statute, Supreme Court rule[,] and case law," Rule 1-054(D)(2), and "[w]e therefore expect . . . courts to exercise their discretion sparingly with regard to costs that are not specifically authorized." *H-S-B P'Ship*, 2008-NMCA-013, ¶ 24. Nevertheless, we conclude that the trial

court was within its discretion to award ACP mediation costs because the court "explain[ed] the circumstances justifying the award." *Id.* (internal quotation marks and citation omitted). The trial court informed the parties that ACP was permitted to recover mediation fees because the mediation was court-ordered and because the City did not participate in the mediation with good faith. The trial court made a similar award for deposition costs and expenses. Although Rule 1-054(D)(2)(e) normally requires that depositions be used at trial or in a successful motion for summary judgment in order for the prevailing party to recover the costs, the trial court in the present case permitted the recovery of all deposition costs. The court explained that this was a complicated case and that the attorneys involved had to sift through a great deal of information in order to determine what testimony was relevant and not duplicative. The trial court noted that none of the depositions taken were unreasonable and as a result awarded all deposition costs under Rule 1-054. Under these circumstances, we see no abuse of discretion in the awards for mediation and deposition costs. *See H-S-B P'Ship*, 2008-NMCA-013, ¶ 28 ("Because the district court affirmatively explained its reasons justifying any deviation from Rule 1-054(D)(2), we affirm its allowance of the . . . costs.").

**{64}** In its final argument, the City contends that the trial court improperly allowed ACP to recover costs related to expert witnesses. The parties do not dispute that Section 1988 does not permit recovery for expert witnesses in Section 1983 actions. *See* § 1988 (permitting the recovery of expert witness fees in proceedings to enforce the provisions of 42 U.S.C. §§ 1981 or 1981a (2000)—but omitting reference to Section 1983); *see also James v. Sears, Roebuck & Co.*, 21 F.3d 989, 995 (10th Cir. 1994) ("There must be an explicit statutory authorization before expert witness fees will be awarded."). ACP characterized witnesses Phil Garcia and William Kraemer as paralegals and thereby recovered those costs under Section 1988. The City argues that these witnesses were experts, and costs are therefore not recoverable. The trial court did not permit ACP to recover for all of the work performed by these witnesses because some of the work was more akin to expert work than paralegal work. It was not contrary to logic and reason for the trial court to carefully examine the work done by these witnesses, conclude that some work was investigatory, and permit costs for that work. *See Case*, 157 F.3d at 1249 (applying Section 1988 and concluding that "[a]s to services provided by non-lawyers, if law clerk and paralegal services are . . . not reflected in the [attorney's fee], the court may award them separately as part of the fee for legal services" (some alterations in original) (internal quotation marks and citation omitted)). Accordingly, we hold that the trial court did not abuse its discretion by permitting the recovery by ACP of the costs related to Garcia and Kraemer.

**{65}** The City also objects to the recovery of costs for Rainhart, Dahlstrom, and Ricker. The trial court found that Rainhart and Ricker testified at trial as experts and that the City did not object. It was not therefore not an abuse of discretion to allow ACP to recover costs for those experts. *See* NMSA 1978, § 38-6-4(B) (1983); *Fernandez v. Española Pub. Sch. Dist.*, 2005-NMSC-026, ¶ 5, 138 N.M. 283, 119 P.3d 163 (acknowledging that a party may recover costs for experts who testify in person or by deposition). We observe that Dahlstrom did not testify by deposition or in person at trial. Instead, ACP argues that it should recover costs for the time that Dahlstrom spent preparing an affidavit for a summary judgment motion. Generally, the preparation of an affidavit by an expert is insufficient to allow the

recovery of costs for expert testimony under Rule 1-054(D)(2)(g). *Pierce v. State*, 121 N.M. 212, 231, 910 P.2d 288, 307 (1995). Nevertheless, the trial court questioned the parties about Dahlstrom's work in this case and learned that the preparation of the affidavit required review of the entire, not insubstantial, record. The trial court's rationale described above, about the complicated nature of this case, also supports the decision to allow Dahlstrom's work to be recovered as costs. As a result, the trial court concluded that the costs were reasonable and we agree. *See H-S-B P'Ship*, 2008-NMCA-013, ¶ 24 ("[C]ourts have the discretion to grant a prevailing party the necessary and reasonable costs incurred in litigating a case.").

## III. CONCLUSION

{66} We affirm the trial court and the jury verdict on the Section 1983 claim and the award of damages, costs, and fees, with the exception of the award of post-judgment interest. We remand the matter to the trial court for an entry of judgment consistent with this opinion.

{67} **IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LYNN PICKARD, Judge Pro Tempore**

Topical Index for *Alb. Commons Partnership v. Alb. City Council*, Nos. 24,026/24,027/24,042/24,425

| CP | CIVIL PROCEDURE |
| CP-DP | Due Process |
| CP-ER | Election of Remedies |
| | |
| CR | CIVIL RIGHTS |
| CR-AF | Attorney Fees |
| CR-PR | Procedure |
| CR-SE | Section 1983 Actions |
| | |
| CT | CONSTITUTIONAL LAW |
| CT-DP | Due Process |
| CT-RP | Ripeness |
| CT-TC | Taking Without Compensation |

**GV** **GOVERNMENT**
GV-LU Land Use
GV-ZL Zoning Law

**JM** **JUDGEMENT**
JM-IN Interest

**RE** **REMEDIES**
RE-CD Compensatory Damages
RE-ER Election of Remedy
RE-MD Measure of Damages